2003 UT App 397

STATE of Utah, in the interest of F.C. III, a person under eighteen years of age.

F.C. Jr., Appellant,

v.

State of Utah, Appellee.

No. 20021059–CA.

Court of Appeals of Utah.

Nov. 21, 2003.

Jeffrey J. Noland, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and John M. Peterson, Asst. Atty. Gen., Salt Lake City, for Appellee.

Martha Pierce, Salt Lake City, Guardian Ad Litem.

Before BILLINGS, Associate P.J., DAVIS and ORME, JJ.

## MEMORANDUM DECISION

DAVIS, Judge:

¶ 1 F.C. Jr. (Father) appeals from a juvenile court decree permanently terminating his parental rights in F.C. III (Child). We affirm.

¶ 2 First, Father argues that by failing to decide the State's motion for no reunification services (the State's motion) prior to conducting the termination of parental rights hearing,[1] the juvenile court erred because, in

---

1. The juvenile court held the State's motion hearing and the termination of parental rights hearing concurrently. Father argues that these hearings should not have been combined and cites to

effect, it had not decided whether reunification services would be offered to Father. This argument is unsupported by the record and is without merit. The juvenile court had rendered a final determination about whether reunification services would be offered to Father before the State's motion was ever filed. At virtually every hearing, including those held prior to the State's motion, the juvenile court ordered that Father was allowed supervised visitation with Child, provided that he submitted himself to urine analysis tests and that the results of these tests indicated he was not using drugs. These orders amount to a final determination that limited reunification services were to be offered to Father.[2] The State's motion did not alter the finality of this determination and, therefore, the juvenile court was not required to render a decision on the State's motion in order to have reached a final determination regarding reunification services.[3]

¶ 3 Second, and based upon his first argument, Father argues that because the juvenile court failed to make a final determination regarding reunification services, it could not have properly held a permanency hearing.[4] Because we have resolved Father's first argument by concluding that the juvenile court did make a final determination regarding reunification services, this argument fails.

■ ¶ 4 Third, Father argues that the juvenile court erred by not holding a permanency hearing, as required by statute. See Utah Code. Ann. § 78–3a–312(1)(a), (b) (2002). The statute governing permanency hearings allows a juvenile court to consolidate a permanency hearing and a termination of parental rights hearing, see id. § 78–3a–312(6)(c), which the juvenile court properly did in this case. Therefore, because the juvenile court held a permanency hearing, this argument also fails.

¶ 5 Fourth, Father argues that if the juvenile court had ruled on the State's motion, Father would have prevailed. Again, this argument is unsupported by the record and is without merit. The juvenile court did rule on the State's motion. Although the juvenile

---

A.E. v. Christean in support of this argument. See 938 P.2d 811 (Utah Ct.App.1997). However, A.E. does not stand for the general proposition that hearings in parental rights termination cases cannot be combined. Although A.E. once stood for the proposition that a permanency hearing (previously called a dispositional review hearing) could not be combined with a termination of parental rights hearing, see id. at 814, it has since been superseded by statute. See Utah Code Ann. § 78–3a–312(6)(c) (2002) ("If a petition for termination of parental rights is filed prior to the date scheduled for a permanency hearing, the court may consolidate the hearing on termination of parental rights with the permanency hearing."). Therefore, Father's reliance upon A.E. is misplaced.

2. Father's argument characterizes one of the juvenile court's orders, dated July 26, 2002, as a "temporary order suspending reunification services." This order provided that "no reunification services shall be provided [to Father] other than [urine analysis] testing and visitation if [Father] is compliant with the drug testing." We disagree with Father's characterization of this order. By its terms, this order did not "suspend[ ] reunification services." Rather, the order reiterated the juvenile court's determination that limited reunification services were to be offered to Father.

3. As an alternative to this argument, Father argues that his due process rights were violated by the juvenile court's July 26, 2002 order, which

was entered after the dispositional hearing. In essence, Father argues that, if this order is deemed to be a final determination by the juvenile court "suspending reunification services," he should have been afforded "an opportunity to present evidence and argument" on this issue to the juvenile court before it revoked his right to reunification services. This argument fails for several reasons. First, we have already concluded that the juvenile court's order did not "suspend[ ] reunification services"; rather, it granted Father limited reunification services. Second, the record reveals that Father had the opportunity to present evidence and argument on this issue at the dispositional hearing. Finally, Father does not have a right to reunification services. See Utah Code Ann. § 78–3a–312(6)(a) (providing that "[n]othing in this section may be construed to ... entitle any parent to reunification services for any specified period of time").

4. The statute governing permanency hearings provides that "a permanency hearing shall be held," Utah Code Ann. § 78–3a–312(1)(a), (b), and that it must be held within a certain amount of time, depending upon whether reunification services have been ordered. See id. (requiring permanency hearing to be held no later than twelve months after original removal of the child if reunification services have been ordered, or within thirty days of the dispositional hearing if reunification services have not been ordered).

court did not include its ruling in the decree terminating Father's parental rights in Child, it did enter the following ruling in the minutes from the termination of parental rights hearing: "The [c]ourt hereby grants the petition for no reunification services...." In addition, Father's argument that he would have prevailed on the State's motion is in direct conflict with his failure to challenge the juvenile court's findings supporting four separate and independent grounds for termination of his parental rights in Child.

¶ 6 Finally, Father argues that the juvenile court erred by failing to enter a finding that the Division of Child and Family Services (DCFS) made reasonable efforts to provide reunification services to him prior to terminating his parental rights in Child, as required by statute. *See* Utah Code Ann. § 78-3a-407(3)(a) (2002). The statute governing termination of parental rights provides that a juvenile court "may terminate all parental rights with respect to a parent if it finds any one of" the grounds listed in the statute. *Id.* § 78-3a-407(1)(a)-(i). This statute further provides that if the juvenile court has ordered DCFS to provide reunification services to a parent, then the juvenile court must make a finding that DCFS "made reasonable efforts to provide those services" prior to terminating that parent's rights under "[s]ubsection (1)(b), (c), (d), (e), (f), or (h)" of the statute. *Id.* § 78-3a-407(3)(a). In this case, the juvenile court entered findings supporting four separate grounds for termination of Father's parental rights in Child. Any one of these grounds was sufficient, by itself, to justify termination of Father's parental rights in Child. *See id.* § 78-3a-407(1)(a)-(i). Although three of these grounds required a finding that DCFS made reasonable efforts to provide reunification services to Father prior to termination of his parental rights in Child, one of them—that Father had abandoned Child pursuant to subsection (1)(a)—did not. *See id.* § 78-3a-

407(1)(a), (3)(a). Therefore, contrary to Father's argument, the juvenile court was not required to enter a finding that DCFS made reasonable efforts to provide reunification services to Father prior to terminating his parental rights in Child.[5] *See id.* § 78-3a-407(3)(a).

¶ 7 Affirmed.

¶ 8 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge, and GREGORY K. ORME, Judge.

---

5. Our review of the decree terminating Father's parental rights in Child reveals that, although it was not required to, the juvenile court did enter findings establishing that DCFS made reasonable efforts to provide reunification services to Father. At the same time, the juvenile court's unchallenged findings indicate that: (1) Father failed to make "any efforts" to take advantage of the reunification services; (2) during the time between Child's adjudication and the termination of parental rights hearing, Father had no visits with Child because of his failure to comply with the requirements of the reunification services; and (3) Father's failure to utilize the reunification services resulted in him having "*no* relationship" with Child.