**2017 UT App 58**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF K.K., J.R.K., AND M.K.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

L.K.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Per Curiam Decision
No. 20161023-CA
Filed March 30, 2017

Fifth Juvenile District Court, St. George Department
The Honorable Paul E. Dame
No. 1066694

Benjamin D. Gordon, Attorney for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

Before JUDGES MICHELE M. CHRISTIANSEN, KATE A. TOOMEY, and
DAVID N. MORTENSEN.

PER CURIAM:

¶1      L.K. (Father) appeals the juvenile court's order terminating his parental rights. We affirm.

¶2      "[I]n order to overturn the juvenile court's decision [to terminate a person's parental rights,] 'the result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made.'" *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 (citation omitted). We "review the juvenile court's factual findings based upon the

clearly erroneous standard." *In re E.R.*, 2001 UT App 66, ¶ 11, 21 P.3d 680. A finding of fact is clearly erroneous only when, in light of the evidence supporting the finding, it is against the clear weight of the evidence. *See id.* Further, we give the juvenile court a "wide latitude of discretion as to the judgments arrived at based upon not only the court's opportunity to judge credibility firsthand, but also based on the juvenile court judges' special training, experience and interest in this field." *Id.* (citations and internal quotation marks omitted). Finally, "[w]hen a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *In re B.R.*, 2007 UT 82, ¶ 12.

¶3     Father first argues that there was insufficient evidence to demonstrate grounds supporting termination of his parental rights. The juvenile court based its termination decision on several grounds, including unfitness. *See* Utah Code Ann. § 78A-6-507(1)(c) (LexisNexis 2012). The evidence in the record supports the juvenile court's findings and determination that Father was unfit to care for his children.[1] For example, the juvenile court found that Father had an extensive history of both drug use and domestic violence. While Father completed one drug treatment program during the course of this case, shortly after completing the program he overdosed on prescription medication in a suicide attempt. A few months later he tested positive for marijuana and methamphetamine, thereafter

---

1. Pursuant to Utah Code section 78A-6-507, the finding of any single ground for termination is sufficient to warrant termination of parental rights. *See* Utah Code Ann. § 78A-6-507(1) (LexisNexis 2012); *In re F.C. III*, 2003 UT App 397, ¶ 6, 81 P.3d 790 (noting that any single ground is sufficient to terminate parental rights). As a result, if there is sufficient evidence to support any of the grounds for termination found by the juvenile court, the termination of Father's rights is appropriate.

expressing a desire to get help for his substance abuse problems. Thus, it is clear that Father's drug habits were not resolved by the completion of the initial drug rehabilitation program. Similarly, the juvenile court found that Father had not adequately addressed his domestic violence issues. Father began classes for domestic violence, but at the time of trial he was still months away from completion of the course.

¶4 Father's failure to adequately address his domestic violence issues is all the more important due to his ongoing relationship with the mother of the children, who had previously relinquished her parental rights to the children. The juvenile court found that the two have a volatile history with each committing violent acts against the other. However, both have expressed their desire to maintain their relationship with the other. In fact, based on the evidence presented, the juvenile court determined that Father's relationship with the mother is likely to continue indefinitely, which causes difficulty due not only to her unresolved domestic violence issues, but also due to her unresolved mental health and drug issues. The mother's unresolved issues make it unsafe for the children to be around her. However, Father does not or cannot recognize these problems, believing that mother is a good mom, that the children are safe around her, and that the children would not be detrimentally affected being around her. Accordingly, due to Father's failure to address several internal issues and to put the children's interests ahead of the interest of the mother, the juvenile court found that the children would not be safe if it returned the children to Father's custody. Thus, evidence in the record supports the juvenile court's decision that Father was unfit.[2] *See In re B.R.*, 2007 UT 82, ¶ 12.

---

2. A court may not terminate a person's parental rights unless it is in the best interests of the children. *See* Utah Code Ann. § 78A-6-503 (LexisNexis Supp. 2016). Father does not challenge the

(continued…)

¶5    Father next asserts that the juvenile court erred in determining that the Division of Child and Family Services (DCFS) made reasonable efforts to reunify him with his children. "Reasonable efforts" has been defined as "a fair and serious attempt to reunify a parent with a child prior to seeking to terminate parental rights." *In re A.C.*, 2004 UT App 255, ¶ 14, 97 P.3d 706. However, the process of reunification is "a two way street which 'requires commitment on the part of the parents, as well as the availability of services from the State.'" *In re P.H.*, 783 P.2d 565, 572 (Utah Ct. App. 1989) (quoting *In re J.C.O.*, 734 P.2d 458, 463 (Utah 1987)). Ultimately, reasonableness is an objective standard that "depends upon a careful consideration of the facts of each individual case." *In re K.F.*, 2009 UT 4, ¶ 51, 201 P.3d 985. Thus, the juvenile court has broad discretion in determining whether DCFS made reasonable efforts to reunify a child with her parent. *In re A.C.*, 2004 UT App 255, ¶ 20.

¶6    Here, in examining DCFS's efforts to reunify the children with Father, the juvenile court noted that "[t]his is not a typical case, rather, it has been a very high-maintenance, chaotic case" due to the significant needs of every family member. When the case was initiated the parents did not trust DCFS, thereby requiring more time to establish a rapport between the caseworker and the parents. Despite this high-maintenance case, DCFS provided extensive help to Father. The caseworker coordinated appointments to obtain Father's psychological and domestic violence evaluations, provided referrals for other services, facilitated payments for services, and provided Father with financial support, including money for a down payment on an apartment. Father also failed to take advantage of some services and internalize the lessons of others. For example,

_____

(…continued)
juvenile court's decision concerning the best interests of the children; accordingly, we do not address the issue.

Father's caseworker was able to place Father and the mother into a shelter that was one of DCFS's primary resource hubs. However, Father left the facility within a week because he believed someone was exhibiting too much interest in the mother. Moreover, despite completing drug counseling Father tested positive for methamphetamine and marijuana. In sum, the evidence in the record supports the juvenile court's determination that DCFS provided reasonable services to Father.

¶7     Finally, Father alleges that the juvenile court erred in denying the mother's attempt to invoke spousal privilege to prevent her from testifying at the trial. Father alleges that the juvenile court improperly allowed a blanket application of Rule 502(e)(4) of the Utah Rules of Evidence to the mother's entire testimony. *See* Utah R. Evid. 502(e)(4) (stating that an exception to spousal privilege applies "[i]f the interest of a minor child of either spouse may be adversely affected, the Court may refuse to allow invocation of the privilege"). Father alleges that the juvenile court should have more thoroughly investigated the totality of the State's anticipated questioning to determine if it would allow the privilege to be asserted at least partially in regard to some lines of questioning. However, this argument was not adequately preserved. "[I]n order to preserve an issue for appeal the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968. Prior to her testimony, the mother raised the argument of spousal privilege, not Father. The court eventually decided that the privilege did not apply under rule 502(e)(4). The mother was then questioned by all parties. Father never objected to any part of her testimony in regard to privilege. If Father believed that certain testimony should not have been included within the scope of the juvenile court's previous ruling, it was incumbent upon him to object to that testimony and provide the court with reasoned arguments as to why that particular testimony should have been privileged. Contrary to Father's, argument it was not

the responsibility of the juvenile court to explore every potential line of questioning prior to issuing its initial ruling. Accordingly, because the issue was not adequately preserved, we decline to address it.

¶8 Affirmed.

_____