**2018 UT App 217**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF A.W. AND A.W.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

A.W.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20180150-CA
Filed November 23, 2018

Fourth District Juvenile Court, American Fork Department
The Honorable Suchada P. Bazzelle
No. 1127762

Scott N. Weight, Attorney for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

HAGEN, Judge:

¶1      The Utah Division of Child and Family Services (DCFS) removed Child and her younger sister from their parent's home following a domestic violence incident and reports of sexual abuse perpetrated by the appellant, their father (Father). After an investigation, the State filed criminal charges against Father and DCFS filed a child welfare petition in juvenile court. The juvenile court found that Father had sexually abused Child but nonetheless ordered reunification services on the

recommendation of DCFS. Two years later, the court terminated Father's parental rights to Child and her younger sister, basing its decision on Father's unfitness and failure of parental adjustment. It also concluded that termination was in the children's best interests.[1]

¶2 Father argues that the juvenile court erred in terminating his parental rights for various reasons. First, Father contends that the court violated his due process rights by delaying reunification services while his criminal charges were still pending and by considering facts not in evidence when deciding to terminate his parental rights. Because Father failed to preserve these arguments below, we decline to consider their merits.

¶3 Next, Father argues that the court erred in determining that DCFS made reasonable efforts to provide him with reunification services and in finding that he was an unfit or incompetent parent. Father has failed to demonstrate that either of these determinations was against the clear weight of the evidence. Accordingly, we affirm.

BACKGROUND

¶4 In March 2016, Child reported to an extended family member that Father had performed oral sex on her when she was eight years old. Child also disclosed that her mother (Mother) told her to keep it a secret. After Child's statement was reported to the police, DCFS immediately removed Child and her younger sister from Mother and Father's care. The State also filed criminal charges against Father based on Child's report.

---

1. Father does not challenge the juvenile court's ultimate determination that the termination of his parental rights was in the children's best interests.

¶5 Following the children's removal from Mother and Father's care, child welfare proceedings were commenced in juvenile court. The juvenile court found an immediate risk of harm to Child and her younger sister and concluded that "removal was appropriate and necessary and continuing removal from [Mother and Father was] appropriate." The court ordered temporary custody of Child and her younger sister to DCFS. Due to the sexual abuse allegation, Father was prohibited from visitation with his children outside of therapy sessions.

¶6 Father admitted that he remembered touching his daughter sexually after taking two sleeping pills, but he maintained that he did not recall performing oral sex on her. Based on Child's report and Father's admission, the court found that Child was abused and that there was a presumption against reunification. Despite the presumption against reunification, the court followed DCFS's recommendation and ordered that Father participate in reunification services and undergo testing to determine his treatment needs. The court also set the primary goal for Child and her younger sister as returning to their parents' care. To accomplish this goal, the court ordered that DCFS develop a child and family plan that stated the duties of the parties in working toward reunification and permanency. At a hearing in May 2016, at which Father was present with counsel, the juvenile court received a completed plan from DCFS, reviewed the plan with the parties, and ordered Father and Mother to comply with it.

¶7 At the same hearing, the court found that DCFS "had made reasonable efforts to finalize the child and family plan and move the children toward permanency, and services offered by the Division have been reasonable." Father did not object to the court's findings. The order also adopted the child and family plan, ordered compliance with it, and directed Father to complete a parental fitness and psycho-sexual evaluation and comply with any evaluation recommendations. In addition, the

court entered an order stating that, should it determine in the future that reunification was against the best interests of the children or that the parents had failed to meet the objectives of the child and family plan, adoption would become the children's new permanency goal.

¶8 In June 2016, DCFS successfully moved for a court order granting temporary guardianship of Child and her younger sister to their maternal grandparents. In August 2016, DCFS submitted a progress report to the juvenile court acknowledging that Father had completed substance abuse and psycho-sexual evaluations and requesting that the child and family plan adopt the recommendations from both treatment evaluations. During a hearing at which both Mother and Father were present, the court ordered that the child and family plan be amended in accordance with DCFS's request and made a finding that DCFS had made reasonable efforts to "finalize the child[ren's] service plan and its permanency goal." Father did not object. The updated child and family plan ordered Father to complete a domestic violence assessment, update DCFS about his substance abuse treatment and testing, provide updates to DCFS and the juvenile court about his ongoing criminal case regarding Child's sexual abuse, and complete services recommended in his psycho-sexual and substance abuse evaluations.

¶9 Father's substance abuse evaluation recommended that he participate in outpatient treatment, abstain from the use of alcohol and drugs, and attend a recovery skills group. Father's psycho-sexual evaluation recommended further treatment to address Father's sexual abuse of Child. The evaluator specifically recommended that Father complete his outpatient substance abuse treatment program, "begin addressing the actual incident of sexually inappropriate behavior," and submit to random drug testing. The evaluation also stated that the evaluator should be informed if Father was eventually convicted of a sex crime so that he could update his recommendations.

¶10   At a hearing in November 2016, the juvenile court reviewed Father's evaluation with Father and his counsel and ordered that Father "complete therapy for sexual appropriateness." Father's attorney requested that the court enter the order for Father to complete the therapy "so that [Father could] get started on [it] right away."

¶11   Additionally, the juvenile court ordered that Father submit to random drug testing at least eight times per month. In March 2017, DCFS requested and the court ordered that Father's testing be increased to two or three times per week. Following a hearing held the same month, the court expressed concern in a written order about "[F]ather's [urine analysis] compliance issues." Thereafter, the juvenile court terminated all other reunification services but ordered Father to continue drug and alcohol testing.

¶12   In April 2017, DCFS petitioned for termination of Father's parental rights, alleging that he had "failed to remedy the circumstances that caused the [c]hildren to be removed from his care." Specifically, DCFS alleged that Father's criminal charges had not been resolved, leaving his ability to provide care and stability for his children in question; his compliance with drug testing was "inconsistent"; he had failed to release information about his progress in therapy and domestic violence treatment to DCFS; and he had not obtained independent housing. The petition also stated that Child and her younger sister had "thrived in the care of their grandparents." As a result, DCFS contended that it was "strictly necessary and in the best interests of the children" to terminate Father's parental rights.

¶13   Before the trial on termination of Father's parental rights, Father pled guilty to child abuse recklessly causing serious physical injury, a third degree felony. The district court placed

Father on probation, the terms of which included Group A sex offender conditions.[2] As a result, his psycho-sexual evaluator provided an addendum to his original evaluation, modifying Father's treatment recommendations. In the addendum, the evaluator recommended that Father participate in individual therapy, group therapy with other sexual offenders, and a psycho-sexual skills course. The stated goal of these treatment recommendations was to help Father "establish[] more functional interpersonal relationships, acknowledg[e] . . . his responsibility regarding his sexual acting out, and control[] his sexual impulses." Father filed a motion in limine to exclude evidence of the evaluator's modified recommendations from the termination trial as irrelevant and unduly prejudicial. The court granted Father's motion in part, but ruled that it would consider the modifications to the extent they affected its determination of the children's best interests.

¶14    At Father's termination trial in September and October 2017, the State presented testimony from Child's therapist, Father's psycho-sexual evaluator, Child's maternal grandmother, and the DCFS permanency worker assigned to Father's case. Child's therapist testified that he had witnessed "nothing but

---

2. Group A conditions include requirements that an individual "[e]nter into, participate, and successfully complete sex offender therapy as determined by the treating facility and therapists as determined by [the Utah Department of Corrections,] [h]ave no direct or indirect contact with victim(s) or victim's family without prior written approval of the board of pardons and parole[, and] . . . [h]ave no contact or association with children under age 18 years, residing at home, without prior written approval of Adult Probation and Parole." *See* Utah Dep't of Corrections, *Sex Offender Group A Conditions*, https://corrections.utah.gov/images/groupaconditions.pdf.

positive interactions" between Child and her maternal grandparents and that he never recommended that Child and Father's interactions be expanded beyond supervised therapy-based visitation.

¶15 Father's psycho-sexual evaluator testified that he had reinterpreted the results of Father's initial tests after he was notified that Father pled guilty to the criminal charges that arose out of Father's sexual abuse of Child. The evaluator explained that, because some of his results "came up defensive," which may have indicated that Father had been dishonest, Father's admission that he had sexually abused Child gave additional meaning to Father's test results.

¶16 The DCFS permanency worker testified that since March 2016 Father had participated in only two individual counseling sessions to address his sexual abuse of Child. The permanency worker further testified that Father had not provided any proof that he engaged in individual therapy sessions to address "sexual appropriateness" as ordered by the court in the November 2016 hearing. When she called the counseling service to obtain the records for DCFS, it confirmed that Father had attended only two individual sessions. In addition, she explained that DCFS was notified the day before trial that Father had only completed his domestic violence training a few weeks before the termination trial.

¶17 Father testified on his own behalf and presented the testimony of his mother, sister, and substance abuse counselor. Father testified that he completed substance abuse counseling and domestic violence treatment, but he admitted that he did not complete therapy sessions to specifically address his sexual abuse of Child. Father also recalled attending four domestic violence counseling sessions between April and August 2016 and attending only one additional individual treatment session, despite recommendations that he attend more. Father once again

admitted to sexually abusing Child. Nevertheless, he maintained that it "wasn't an intentional" act of abuse, because he had been under the influence of alcohol and prescription drugs at the time. Father testified that he addressed his sexual abuse of Child in his four sessions with a domestic violence counselor and that he felt he had taken accountability for the abuse. He further admitted at trial that he had missed drug tests on multiple occasions because he had remembered to call the testing center too late in the day and that he had simply stopped calling in September 2017, despite a court order to continue testing. In addition, Father admitted that he had consumed alcohol "a couple of times" since his juvenile court case was opened.

¶18 At the conclusion of the termination trial, the juvenile court determined that Father was "an unfit or incompetent parent." In support of this determination, the court found that Father's delay in participating in domestic violence treatment "left insufficient time for him to demonstrate that he ha[d] internalized and implemented the treatment and met the objective of the Child and Family Plan," that Father's "compliance with court-ordered [drug and alcohol] testing was inconsistent," that Father "willfully decided not to comply" with his testing obligations, and that Father participated "in one individual counseling session to address his sexual abuse of [Child]."

¶19 In addition, the court found that Father's extensive defense at trial of "his lack of progress in treating the sexual abuse issue" was "without merit." Specifically, the court rejected Father's assertions that he had complied with each of the court's treatment orders and that his substance abuse and domestic violence treatment adequately addressed his sexual abuse of Child. The court remained unconvinced, in the absence of expert testimony, that Father's consumption of drugs and alcohol was the sole cause of Child's sexual abuse. But assuming it was, the court reasoned that Father was "solely responsible for having

ingested the substances and cannot be excused from his misconduct." The juvenile court also explained that while it would not consider the psycho-sexual evaluator's modified recommendations in determining whether Father had complied with treatment recommendations,[3] it would consider them to the extent that they showed "what treatment [was] needed to fully rehabilitate [Father]."

¶20    Finally, after concluding that "DCFS made reasonable efforts toward [Father] to pursue a goal of reunification" and that Father "was given ample information, support[,] and communication from DCFS to achieve the objectives of the Child and Family Plan," the court terminated Father's parental rights and awarded temporary guardianship and custody to the children's maternal grandparents, pending adoption.[4]

¶21    Father appeals.

ISSUES AND STANDARDS OF REVIEW

¶22    Father argues that the juvenile court committed four errors in terminating his parental rights. First, Father contends that the juvenile court erred by failing to maintain the

---

3. Because Father did not receive the addendum until after reunification services had been terminated, the juvenile court did not consider the addendum "in its analysis of the grounds of failure of parental adjustment and/or compliance with the Child and Family Plan."

4. In the same order terminating Father's parental rights, the juvenile court also accepted and entered Mother's voluntary relinquishment of parental rights, which Mother executed in a hearing before Father's termination trial.

independence of the juvenile court proceedings from the concurrent criminal court proceedings and by making reunification contingent on resolution of the criminal charges. Next, Father contends that the juvenile court erred when it independently investigated the facts and relied on that evidence in its order terminating parental rights. With both contentions, Father essentially argues that the juvenile court violated his due process rights. *See In re J.B.*, 2002 UT App 268, ¶ 8, 53 P.3d 968 (holding that a juvenile court's reliance on facts that the father never had an opportunity to challenge violated due process); *In re S.A.*, 2001 UT App 308, ¶ 21, 37 P.3d 1172 (holding that "due process rights are not violated by multiple or simultaneous proceedings" but "a criminal prosecution is a completely independent proceeding" from a child welfare case (quotation simplified)). "Constitutional issues, including due process, are questions of law which we review for correctness." *In re adoption of S.L.F.*, 2001 UT App 183, ¶ 9, 27 P.3d 583 (quotation simplified).

¶23 Father's third contention is that the evidence did not support the juvenile court's finding that DCFS had made reasonable efforts to provide him with reunification services. Juvenile courts are afforded "wide latitude of discretion as to the judgments [they] arrive[] at." *In re K.F.*, 2009 UT 4, ¶ 18, 201 P.3d 985 (quotation simplified). As such, "[w]e apply a clearly erroneous standard in determining whether the juvenile court's findings are based upon sufficient evidence." *Id.* "A finding of fact is clearly erroneous only when, in light of the evidence supporting the finding, it is against the clear weight of the evidence." *In re K.K.*, 2017 UT App 58, ¶ 2, 397 P.3d 745 (per curiam).

¶24 Finally, Father contends that the juvenile court's grounds for terminating his parental rights were against the clear weight of the evidence. When considering whether to overturn a juvenile court's decision to terminate parental rights, "we review

the juvenile court's factual findings based upon the clearly erroneous standard." *In re B.C.*, 2018 UT App 125, ¶ 2, 428 P.3d 18 (per curiam) (quotation simplified).

## ANALYSIS

### I. Father's Due Process Claims

¶25    Father's first two claims of error—that the juvenile court improperly delayed his case pending the resolution of the criminal charges against him and that it improperly considered evidence outside of the record—fail for lack of preservation. "Under our adversarial system, the parties have the duty to identify legal issues and bring arguments before an impartial tribunal[.]" *State v. Johnson*, 2017 UT 76, ¶ 14, 416 P.3d 443. "When a party fails to raise and argue an issue in the [court below], it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation." *Id.* ¶ 15. Furthermore, even if a legal argument was adequately preserved in the court below or an exception to preservation applies, a party must provide a "citation to the record showing that the issue was preserved for review[] or a statement of grounds for seeking review of an issue not preserved." Utah R. App. P. 24(a)(5)(B).

¶26    Here, Father raises his constitutional claims for the first time on appeal and makes no argument that an exception to preservation applies. In fact, Father argued in his opening brief that his constitutional claims "were not required to be preserved."[5] To the contrary, it is well established that Utah

---

5. In making the argument that these issues need not be preserved for appellate review, Father cites rule 52(a)(3) of the Utah Rules of Civil Procedure but provides no further

(continued…)

appellate courts will not review unpreserved constitutional claims unless an exception to the preservation rule applies. *See, e.g., Kell v. State*, 2012 UT 25, ¶ 36, 285 P.3d 1133 (declining to consider constitutional arguments on appeal where they had not been preserved and the defendant had not demonstrated that an exception to the preservation rule applied); *Donjuan v. McDermott*, 2011 UT 72, ¶ 4, 266 P.3d 839 (declining to consider a father's constitutional claims in a child custody dispute because "he failed to preserve them in the district court").

¶27 Accordingly, we decline to address Father's due process claims.

## II. "Reasonable Efforts" Finding

¶28 Father next claims that the juvenile court's finding that DCFS made reasonable efforts to provide him with reunification services "is against the clear weight of the evidence." Specifically, Father argues that DCFS failed to provide his psycho-sexual evaluator with information that would have impacted the evaluator's recommendations. As a result, he contends that he was afforded an inadequate opportunity to comply with the recommendations in the addendum to his psycho-sexual evaluation and that DCFS deprived him of "reasonable visitation" with his daughters. We reject these arguments and affirm the juvenile court's finding that DCFS made reasonable efforts to provide Father with reunification services.

¶29 When reunification services are ordered, the juvenile court must find that DCFS made "reasonable efforts" to provide

---

(…continued)
explanation of how rule 52 operates to nullify our longstanding rule that questions of constitutional law must be preserved.

such services before terminating parental rights. Utah Code Ann. § 78A-6-507(3)(a) (LexisNexis Supp. 2018). "Reasonableness is an objective standard that depends upon a careful consideration of the facts of each individual case." *In re K.K.*, 2017 UT App 58, ¶ 5, 397 P.3d 745 (per curiam) (quotation simplified). In determining whether DCFS has made reasonable efforts at reunification, we afford the juvenile court "broad discretion," *In re A.R.*, 2017 UT App 153, ¶ 47, 402 P.3d 206 (quotation simplified), because of "the court's opportunity to judge credibility firsthand . . . [and] the juvenile court judges' special training, experience and interest in this field." *In re K.K.*, 2017 UT App 58, ¶ 2 (quotation simplified). Generally, as long as DCFS has made "a fair and serious attempt to reunify a parent with a child prior to seeking to terminate parental rights," the division has complied with its statutory obligation. *Id.* ¶ 5 (quotation simplified).

¶30    Here, without acknowledging that the juvenile court ordered reunification services in a case in which there was a statutory presumption against doing so, *see* Utah Code Ann. § 78A-6-312(4)(LexisNexis 2012), Father fails to identify any facts in the record that suggest DCFS did not make reasonable efforts to provide him with reunification services.[6] The record shows that DCFS timely facilitated counseling for Father and Child, developed a child and family plan that the court adopted in an order, and referred Father to substance abuse and psycho-sexual evaluators. DCFS also supervised Father's progress throughout the proceedings and monitored the children's welfare.

¶31    Father also ignores the several times in the record in which the juvenile court made an unchallenged periodic

---

6. Father provides only two citations to the record to support his argument on this point. Instead of providing citations, he has cobbled together an argument from bare assertions of fact and unidentified quotations from various court orders.

finding—before its termination order—that DCFS had made reasonable efforts to provide him with reunification services. Rather, to support his argument, Father makes unsupported assertions that DCFS deprived him of an opportunity to comply with the recommendations in the psycho-sexual evaluation addendum and that, as a result, he could not visit with Child outside of therapy. As to the psycho-sexual evaluation addendum, Father has pointed to no evidence in the record that suggests the addendum was not made available to Father as soon as possible. The evaluator testified that he made changes to his recommendations immediately after DCFS notified him of Father's criminal conviction, which prompted the modifications.

¶32    Furthermore, although Father accurately asserts that the addendum was not provided to him until after reunification services were terminated, he fails to show how he was prejudiced by this timing. The juvenile court did not consider the addendum to the evaluation in determining that Father had failed to participate in reunification services and comply with previous treatment recommendations. As Father acknowledges, the court considered the addendum only to determine "what [was] needed to fully rehabilitate [Father] in light of his criminal conviction" for the purpose of deciding what was in the children's best interests going forward.

¶33    As to Father's argument that DCFS failed to provide him with reasonable visitation, both Child's therapist and the DCFS permanency worker testified at trial that visitation was dependent on what Child and her treatment providers decided was in her best interest. From the outset of his juvenile court case, Father's visitation with Child was limited due to his admitted sexual abuse of Child.[7] And although the juvenile court

---

7. Notably, Utah Code section 78A-6-312 provides that "[i]n cases where obvious sexual abuse… [is] involved" neither DCFS

(continued…)

requested that DCFS speak with Child's therapist about additional visitation after termination of reunification services, Father has not shown where the record supports his contention that DCFS did not make reasonable efforts to do so.

¶34    In sum, Father has failed to identify anywhere in the record that shows DCFS failed to make reasonable efforts to provide him with reunification services and, accordingly, we affirm the juvenile court's findings.

### III. Grounds for Termination

¶35    Finally, Father contends that the grounds cited by the juvenile court in terminating his parental rights are against the clear weight of the evidence. Under Utah Code section 78A-6-507, a court may terminate parental rights on the basis of any one of the grounds listed therein. Utah Code Ann. § 78A-6-507(1) (LexisNexis 2012). Among other things, "[a] juvenile court may terminate parental rights if the court finds that a parent has either abandoned a child, neglected a child, or is an unfit or incompetent parent." *In re B.O.*, 2011 UT App 215, ¶ 2, 262 P.3d 46 (per curiam). "[W]hen a foundation for [such findings] exists in the evidence," we do not "engage in a reweighing of the evidence." *In re B.C.*, 2018 UT App 125, ¶ 2, 428 P.3d 18 (per curiam) (quotation simplified).

¶36    The juvenile court terminated Father's parental rights on two bases—that Father is an unfit or incompetent parent and

---

(…continued)
nor a juvenile court "has any duty to make 'reasonable efforts' or to, in any other way, attempt to provide reunification services." Utah Code Ann. § 78A-6-312(4) (LexisNexis Supp. 2018). And under subsection (3), visitation is included in the definition of reunification services. *Id.* § 78A-6-312(3).

that Father demonstrated a failure of parental adjustment. *See* Utah Code Ann. § 78A-6-507(1). "So long as sufficient evidence existed to support at least one of the grounds found by the court, the termination of Father's parental rights was appropriate." *In re A.J.*, 2017 UT App 235, ¶ 26, 414 P.3d 541.

¶37 We need not consider the juvenile court's alternative ground for termination because there was sufficient evidence to support the finding that Father was an unfit or incompetent parent. Utah Code section 78A-6-508 lists circumstances that "constitute prima facie evidence of unfitness." Utah Code Ann. § 78A-6-508(6)(a) (LexisNexis 2012). "[S]exual abuse . . . due to known or substantiated abuse or neglect by the parent" is included in that list. *Id.* Here, the court found, and Father admitted on multiple occasions, including at his termination trial, that he had sexually abused Child. The court noted this fact in its order and relied on it in terminating Father's parental rights.

¶38 Nevertheless, Father argues that while his "prior conduct did constitute prima facie evidence of [his] unfitness," he "could demonstrate parental fitness" because he complied with reunification services and the juvenile court's orders. This argument ignores the juvenile court's specific finding that "[a]s of the date of the trial, [Father's] sexual abuse of [Child was] almost entirely untreated on his part." The court ordered Father to complete therapy to specifically address his sexually abusive behavior and "sexual appropriateness." Father does not dispute that he attended only one or two therapy sessions that specifically addressed sexual appropriateness. Instead, Father contends that his substance abuse treatment adequately addressed the sexual abuse because he would not have sexually abused Child if he had not been intoxicated. But Father's attendance of substance abuse therapy does not excuse his failure to complete "sexual appropriateness" therapy as the juvenile court expressly ordered. Furthermore, Father's entire

defense of his sexually abusive actions was that he was under the influence of alcohol and drugs at the time he committed the abuse such that he did not remember doing so. Despite this, the juvenile court found that Father willfully failed to comply with the court's drug and alcohol testing order and that he admitted to drinking while his juvenile court case was pending.

¶39   Overall, the record supports the juvenile court's finding that Father's behavior demonstrated a "remarkably passive attitude toward his reunification services." Not only did Father fail to comply with the court's order for drug and alcohol testing and order for individual sex abuse therapy, but Father also delayed participating in other services until just before his termination trial. For example, the court ordered Father to receive and comply with a domestic violence evaluation in early 2016. Father did not begin domestic violence treatment until nearly a year later and did not complete it until a few weeks before his termination trial. The record shows that Father had many opportunities to meaningfully participate in reunification services and demonstrate his fitness and successful parental adjustment from the outset of the juvenile court proceedings but failed to do so. As such, the evidence supports a finding that Father was an unfit parent because he sexually abused Child and because he failed to adequately remedy the circumstances that led to that abuse.

## CONCLUSION

¶40   Because Father failed to preserve his claim that the juvenile court violated his due process rights and has not demonstrated that an exception to the preservation rule applies, we decline to address his constitutional arguments. We reject Father's other arguments and affirm the juvenile court's determinations that DCFS made reasonable efforts to provide reunification services and that Father's sexual abuse of Child

and failure to comply with court orders were grounds for termination of his parental rights.

———