2020 UT App 59

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF D.M.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

D.M.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20190470-CA
Filed April 9, 2020

Third District Juvenile Court, Salt Lake Department
The Honorable Kimberly K. Hornak
No. 1150140

Julie George, Attorney for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES KATE APPLEBY and DIANA HAGEN concurred.

ORME, Judge:

¶1 Appellant D.M. (Father) challenges the juvenile court's decision to terminate his parental rights to his child, D.M. (Child), arguing that there was insufficient evidence to support the court's decision. Because there was sufficient evidence to support at least one of the grounds for termination upon which the court relied, we affirm.

BACKGROUND

¶2 In October 2017, the State removed Child from his mother's (Mother) custody following an incident where Mother, while arguing with her boyfriend in a car in which Child was present, "got out . . . and attempted to run in front of a semi as a suicide attempt." Mother was taken to a hospital, and Child "was taken into protective custody by Law Enforcement." Father was unable to take custody of Child at that time because he had "just got out of jail" for violation of a protective order entered as a result of Father being "physically violent with Mother in front of Child."

¶3 The Utah Division of Child and Family Services (DCFS) took custody and guardianship of Child and placed him with a foster family. The juvenile court then ordered both Mother and Father to comply with service plans DCFS created for them. The court also ordered Father to attend domestic violence classes, to complete a domestic violence assessment, and to take drug tests "more than once a month and at random." The court then set "[t]he primary goal for" Child as reunification with Mother and Father "with a concurrent goal of adoption."

¶4 In May 2018, because Father "was in compliance with" DCFS's plan and because his drug tests were coming back negative, the juvenile court authorized a trial home placement of Child with Father. During the beginning of this placement, Father held a full-time job and was able to provide financial support for Child. Mother, however, again attempted suicide, and following multiple failures to comply with her service plan, the court changed the permanency goal for Child to reunification with only Father.

¶5 In October 2018, approximately two months into Child's trial home placement, Father was arrested for driving under the

influence (DUI).[1] At that time, Father was on parole for aggravated assault resulting in serious bodily injury, a crime he committed against Mother in 2016. In November 2018, as a result of the DUI, Father's parole was terminated and he was returned to prison for "an indefinite term of not less than one year, nor more than fifteen years." The juvenile court then terminated Father's reunification services and designated adoption as the sole permanency goal for Child.

¶6    In April 2019, the court held a parental termination trial for both Father and Mother.[2] By the time of trial, Father had spent approximately four months in prison and his actual release date was unclear, although it could potentially be as long as fifteen years. Father testified that the "matrix guidelines" for his case suggested that he serve 32 months and that he had served about 22 months total at the time of trial, meaning he expected to be released from prison in approximately another ten months.

¶7    Following the termination trial, the juvenile court made the following findings of fact:

> [DCFS] and other agencies have made active efforts to provide remedial Services and rehabilitative programs designed to prevent the breakup of the family. . . . Father did complete drug and alcohol treatment. However, Father received a DUI which was the basis for the revocation of his [parole] during the time when he had a trial home placement with Child. Father was provided

---

1. At the time of the arrest, Child was at Father's home with a babysitter.

2. Following the trial, the court terminated Mother's parental rights to Child. Mother does not appeal that termination, and from this point we therefore recite the juvenile court's findings of fact and rulings only as relevant to Father's termination.

services regarding domestic violence treatment, but he did not complete that program.

. . . .

It would be in [Child's] best interests to be adopted where [Child] will be secure, stable, and protected from further abuse and neglect and where [Child's] physical and emotional needs are being met.

Father had the opportunity and in fact did complete drug and alcohol treatment, but the fact that he recently received a DUI in October 2018, while Child had only been on a trial home placement with him for two months, is evidence that the court must consider that he still has a substance abuse problem and has not addressed that problem. Father currently is incarcerated at the State Prison. There is no clear and convincing evidence when he will be released. Therefore, the Court must find that he cannot currently care for his child at this time.

Furthermore, under Utah Code Ann. § 78A-6-508(2)(e) the Court shall consider, and it is required not discretionary, the fact that a parent is incarcerated for a greater term of more than one year. The court is required to consider the fact that Father is incarcerated and cannot care for his child.

. . . .

There is no proof that Father has completed domestic violence treatment. Domestic violence was a concern and finding at the origination of this case. Therefore, the Court cannot find that Father has addressed that concern such that Child is not at risk if he were with Father.

The court also found that Child had spent "[a]lmost half his life" with his foster family and that "[t]hey want to adopt him, are bonded with him, [and Child] is bonded with his foster family."

¶8      The court then ruled that it was "strictly necessary to terminate" Father's parental rights under Utah Code section 78A-6-507(1)(b)–(e), because it found that (1) Father "neglected" Child; (2) Father is "an unfit or incompetent parent"; (3) Father "substantially neglected, willfully refused, or has been unable or unwilling to remedy the circumstances that caused Child to be in an out of home placement, and there is a substantial likelihood" that Father would "not be capable of exercising proper and effective parental care in the near future"; and (4) "there has been a failure of parental adjustment." The court also found that Child "has suffered, or is substantially likely to suffer, serious detriment should Child be returned to the custody of [Father]" and, because Father has "not availed [himself]" of the offered reunification services, "[i]t is in the best interest of [Child] to terminate [Father's] parental rights . . . so that Child can be adopted by a loving family and achieve security, stability and a sense of permanency."

¶9      Father appeals.


ISSUE AND STANDARDS OF REVIEW

¶10     Father argues that "there is insufficient evidence to support the . . . grounds upon which the Court found [his] rights could be terminated." The decision "whether to terminate a parent's rights presents a mixed question of law and fact." *In re B.T.B.*, 2018 UT App 157, ¶ 8, 436 P.3d 206 (quotation simplified), *cert. granted*, 440 P.3d 692 (Utah 2019). "In such situations, we review a trial court's findings for clear error and its conclusions of law for correctness, affording the court some discretion in applying the law to the facts." *Id.* (quotation simplified). Ultimately, due to the "factually intense nature" of the analysis, a juvenile court's final decision regarding the termination of

parental rights "should be afforded a high degree of deference," and we will not overturn such a decision unless it is "against the clear weight of the evidence" or leaves us "with a firm and definite conviction that a mistake has been made." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 (quotations simplified). Of significance in this case, when a juvenile court relies on multiple grounds in terminating parental rights, we will affirm when we are able to sustain one of the grounds and need not consider the other grounds relied on by the court. *See* Utah Code Ann. § 78A-6-507(1) (LexisNexis 2018) (stating that "the court may terminate all parental rights with respect to a parent if the court *finds any one*" of the enumerated grounds for termination) (emphasis added); *In re F.C. III*, 2003 UT App 397, ¶ 6, 81 P.3d 790 (holding that "the juvenile court entered findings supporting four separate grounds for termination of . . . parental rights" and that "[a]ny one of these grounds was sufficient, by itself, to justify termination of . . . parental rights").

ANALYSIS

¶11 Before a court may terminate parental rights, the State must establish the facts warranting termination "by clear and convincing evidence."[3] Utah Code Ann. § 78A-6-506(3) (LexisNexis 2018). If the State meets this burden, the juvenile court is required to employ a two-part test before terminating

---

3. Our briefing order directed the parties to "specifically address who bears the burden of any uncertainty regarding Father's [prison] release date." Both parties agree that the State bears the burden to establish by clear and convincing evidence any statutory basis used by the juvenile court for termination of parental rights. *See* Utah Code Ann. § 78A-6-506(3) (LexisNexis 2018) (stating that the petitioner is required "to establish the facts by clear and convincing evidence" warranting termination of a parent's rights). *Accord In re K.J.*, 2013 UT App 237, ¶ 26, 327 P.3d 1203. We agree and need not discuss this issue further.

those rights. *In re H.F.*, 2019 UT App 204, ¶ 13, 455 P.3d 1098. First, the "court must find that one or more of the statutory grounds for termination are present, and second," it "must find that termination of the parent's rights is in the best interests of the child." *Id.* (quotation simplified). "As part of the best interest analysis, Utah law requires courts to analyze whether termination of a . . . parent's rights is strictly necessary." *Id.* ¶ 14 (quotation simplified).[4]

¶12   Three statutory provisions are germane to our analysis in this case. Utah Code section 78A-6-507 provides the "[g]rounds for termination of parental rights" and directs that parental rights are to be terminated only when the court finds it "strictly necessary" due to "any one" of a long list of enumerated grounds. The grounds for termination relevant to this appeal are:

> (b) that the parent has neglected or abused the child;
>
> (c) that the parent is unfit or incompetent;
>
> (d) (i) that the child is being cared for in an out-of-home placement under the supervision of the court or [DCFS];
>
> (ii) that the parent has substantially neglected, willfully refused, or has been unable or unwilling to remedy the circumstances that

---

4. On appeal, Father challenges only the sufficiency of the evidence to support the juvenile court's findings establishing grounds for termination of his parental rights. Father does not challenge the court's "best interest" or "strictly necessary" determinations, and thus we have no occasion to consider those aspects of the court's analysis.

> cause the child to be in an out-of-home placement; and
>
> (iii) that there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care in the near future;
>
> (e) failure of parental adjustment, as defined in this chapter.

Utah Code Ann. § 78A-6-507(1)(b)–(e) (LexisNexis 2018). "Failure of parental adjustment" is defined as a parent being "unable or unwilling within a reasonable time to substantially correct the circumstances, conduct, or conditions that led to placement of their child outside of their home, notwithstanding reasonable and appropriate efforts made by [DCFS] to return the child to that home." *Id.* § 78A-6-502(2). Finally, when considering "whether a parent . . . [is] unfit or ha[s] neglected a child," *id.* § 78A-6-508(2)—the grounds for terminating parental rights found in sections 507(1)(b) and 507(1)(c)—the juvenile court is required to consider, among other things, the following:

> (a) emotional illness, mental illness, or mental deficiency of the parent that renders the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time;
>
> . . .
>
> (c) habitual or excessive use of intoxicating liquors, controlled substances, or dangerous drugs that render the parent unable to care for the child;
>
> (d) repeated or continuous failure to provide the child with adequate food, clothing, shelter, education, or other care necessary for the child's

physical, mental, and emotional health and development by a parent or parents who are capable of providing that care;

(e) whether the parent is incarcerated as a result of conviction of a felony, and the sentence is of such length that the child will be deprived of a normal home for more than one year;

(f) a history of violent behavior;

. . . .

*Id.* § 78A-6-508(2)(a), (c)–(f).

¶13 This case turns on Father's argument that the evidence the State presented was insufficient to support the juvenile court's conclusion that he failed to remedy the circumstances of Child's removal under Utah Code section 78A-6-507(1)(d).[5] To terminate

_____

5. Father also challenges the juvenile court's termination on the grounds that he was unfit and that he neglected Child—the grounds that implicate the one-year incarceration provision of Utah Code section 78A-6-508(2)(e). The juvenile court found that there was "no clear and convincing evidence" of Father's release date, and thus Father could not "care for his child at this time." The court then explained that under section 508(2)(e), it was required to consider "the fact that a parent is incarcerated for a . . . term of more than one year" and "cannot care for his child." Father argues that this finding was in error because the court had concluded that there was "no clear and convincing evidence" as to the length of his imprisonment. To the extent that the juvenile court relied on the length of Father's incarceration to terminate Father's rights on the grounds that he was unfit or had neglected Child, it likely erred because there was no clear and convincing evidence that Father's incarceration would deprive Child of a normal home life for more than a year.

(continued…)

a parent's rights under section 507(1)(d), a court must find that (1) the child is in an out-of-home placement,[6] (2) the parent has failed to remedy the circumstances that resulted in that placement, and (3) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care in the near future." *Id.* § 78A-6-507(1)(d).

¶14    Father specifically assails the juvenile court's finding that "there is a substantial likelihood that [Father] will not be capable of exercising proper and effective parental care in the near future." Father argues that this finding "directly implicates the issue of how long Father will be unavailable due to his incarceration," and because "the Court specifically found that there is no clear and convincing evidence as to duration," this evidence cannot be used to support the court's termination on this ground. We are not persuaded.

¶15    When a juvenile court is considering termination for neglect, under section 507(1)(b), or for unfitness, under section 507(1)(c), it must consider whether the parent will be incarcerated for more than a year. *Id.* § 78A-6-508(2)(e). But nothing in section 507(1)(d), or elsewhere in the Utah Code, prohibits a juvenile court from considering a parent's current incarceration, regardless of length, when determining whether the parent has failed to remedy the circumstances that led to the

---

(…continued)
But as previously stated, the court was required to find only one statutory ground for termination, and by finding that Father failed to remedy the circumstances of Child's removal under section 507(1)(d)—a separate ground that does not require the court to find any particular length of incarceration—we can readily uphold the court's termination on that ground notwithstanding any error with respect to these other grounds.

6. It is undisputed that Child was living with a foster family in an out-of-home placement.

child's removal and whether the parent will be able to provide effective parental care in the near future. *See in re A.H.*, 2009 UT App 232, ¶ 26, 217 P.3d 278 ("The juvenile court properly considered Mother's incarcerations . . . as one aspect of her inability to parent the Children."). And while there was no clear and convincing evidence that Father's incarceration would extend for more than one year for purposes of Utah Code section 78A-6-508(2)(e), there was clear and convincing evidence that Father was incarcerated and that he would remain incarcerated for a significant period—at least ten more months, as Father himself conceded. Father's incarceration therefore was a proper consideration for the court in determining that Father failed to remedy the circumstances that led to Child's removal and that Father would be unable to care for Child in the near future.

¶16 Father's incarceration for violating his parole was evidence of Father being "unable or unwilling to remedy the circumstances that cause[d Child] to be in an out-of-home placement," *see* Utah Code Ann. § 78A-6-507(d), which placement partially came about because Father, who had "just got out of jail," could not take custody of Child when the State removed Child from Mother's custody following her suicide attempt. And by the time of trial, he was once again incarcerated and could not care for Child. The evidence of his significant incarceration—22 months in the recent past with some ten months yet to be served—was a significant basis on which the court could find that "there [was] a substantial likelihood that [Father would] not be capable of exercising proper and effective parental care *in the near future*." *See id.* (emphasis added).

¶17 Father's DUI arrest further supports the court's termination decision on this ground. The court found that while Father "did complete drug and alcohol treatment," the DUI was "evidence that the court must consider that he still has a substance abuse problem and has not addressed that problem." Again, this evidence shows that Father was unable or unwilling to remedy the problems that resulted in Child being removed from his care.

¶18    Nor is Father's incarceration and DUI the only evidence that supports the court's termination decision under section 507(1)(d). The court also found that "[d]omestic violence was a concern . . . at the origination of this case," and "[t]here is no proof that Father has completed domestic violence treatment," which he was ordered to do more than a year earlier. By failing to complete the ordered treatment within that time, Father demonstrated his inability or unwillingness to remedy the circumstances that caused Child's out-of-home placement, which in part was the result of Father being "physically violent with Mother in front of Child." This failure further supports the court's finding that there was a "substantial likelihood" that he would not complete the treatment "in the near future" and would not "be capable of exercising proper and effective parental care." *See id.*

¶19    Given the clear and convincing evidence presented to the juvenile court establishing Father's inability to remedy the circumstances that led to Child's removal and his inability to care for Child in the near future, "the termination of [Father's] parental rights was consistent with the juvenile court's findings, and the findings were not against the clear weight of the evidence." *See in re A.H.*, 2009 UT App 232, ¶ 25. Ultimately, we are not left "with a firm and definite conviction that a mistake has been made." *See in re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 (quotation simplified).

CONCLUSION

¶20    There was sufficient evidence before the juvenile court to support its key findings and those findings support its decision to terminate Father's parental rights on the ground that he was unable or unwilling to remedy the circumstances that caused Child's removal and that he would not be capable of remedying these circumstances in the near future.

¶21    Affirmed.

_____