2014 UT App 100

**Lorin BLAUER, Plaintiff and Appellant,**

v.

**DEPARTMENT OF WORKFORCE
SERVICES, Defendant and
Appellee.**

No. 20130047–CA.

Court of Appeals of Utah.

May 1, 2014.

Vincent C. Rampton, Salt Lake City, Attorney for Appellant.

Sean D. Reyes, Salt Lake City, J. Clifford Petersen, and Philip S. Lott, Attorneys for Appellee.

Judge JAMES Z. DAVIS authored this Opinion, in which Judge GREGORY K. ORME and Senior Judge RUSSELL W. BENCH concurred.[1]

Opinion

DAVIS, Judge:

¶ 1 Lorin Blauer appeals the trial court's dismissal of his claims under the federal Americans with Disabilities Act (ADA), *see* 42 U.S.C. § 12112(b)(5)(A) (requiring employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee"), and the Utah Antidiscrimination Act (UADA), *see* Utah Code Ann. § 34A–5–106(1)(a)(i)(H) (LexisNexis Supp.2013) (prohibiting employment practices that discriminate on the basis of disability). We affirm.

## BACKGROUND

¶ 2 This case is the fifth in a series of cases addressing Blauer's civil and administrative claims relating to his employment with and termination from the Department of Workforce Services (DWS). Additional facts are outlined in those cases. *See Blauer v. Career Serv. Review Bd. (Blauer IV)*, 2012 UT App

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

120, 276 P.3d 1246; *Blauer v. Department of Workforce Servs.* (*Blauer III*), 2008 UT App 84, 2008 WL 660522; *Blauer v. Department of Workforce Servs.* (*Blauer II* ), 2007 UT App 280, 167 P.3d 1102; *Blauer v. Department of Workforce Servs.* (*Blauer I* ), 2005 UT App 488, 128 P.3d 1204.

¶ 3 Blauer worked as legal counsel for DWS. Beginning in 2003, Blauer sought ADA accommodations for sleep apnea, sciatica, and coronary artery disease. His doctor recommended that DWS accommodate Blauer's sciatica and sleep apnea by selecting his assignments "in such a way as to avoid, as much as possible, his functioning in . . . sedentary settings" and that it accommodate Blauer's coronary artery disease by making his work environment less stressful, i.e., by providing him with "[k]nown and understood expectations" limited to "a full 40 hour work load for an experienced attorney in Mr. Blauer's specialty." Blauer provided this recommendation to DWS's ADA coordinator, who determined that his "limitations [did] not rise to a level requiring an ADA accommodation" but referred the recommendations to Blauer's supervisor. In response to Blauer's concerns, as well as additional concerns about Blauer's work performance, his supervisor changed his work assignment and required that he "conduct [unemployment insurance] hearings full-time with no change in job title or pay rate." Blauer contested the reassignment, arguing that conducting hearings full time would require him to sit for long stretches of time and prevent him from moving around as his doctor had recommended. However, DWS's executive director upheld the reassignment, explaining that "[s]ince the majority of these hearings are conducted over the telephone, there should be no problem with [Blauer] standing up and moving around [his] office while the hearings are in progress." Thereafter, Blauer applied for and was granted medical leave pursuant to the Family and Medical Leave Act (FMLA). Blauer refused to return to work until DWS agreed to make the accommodations he sought, and after Blauer had exhausted his FMLA leave, DWS terminated his employment.

¶ 4 While on FMLA leave, Blauer filed a grievance with the federal Equal Employment Opportunity Commission (EEOC) and received a Notice of Right to Sue from the Civil Rights Division of the United States Department of Justice. *See generally Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir.1996) (per curiam) (holding that an employee seeking to pursue an ADA claim must exhaust her administrative remedies by filing a charge of discrimination with the EEOC prior to filing a civil claim, and citing identical holdings from other federal courts that have considered the issue). Blauer then filed a complaint in state court, alleging violations of the ADA and the UADA, seeking both monetary damages and reinstatement of his employment with DWS. DWS moved to dismiss the claims, and the trial court granted its motion, determining that DWS was immune from suit under the ADA and that the trial court lacked jurisdiction over the UADA claims because the UADA provides only an administrative remedy and not a private right of action. Blauer appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 Blauer asserts that the State has waived sovereign immunity with respect to ADA claims and that the trial court therefore erred in dismissing his claims on grounds of sovereign immunity. "[A] district court's dismissal of a case based on governmental immunity is a determination of law that we afford no deference. We review such conclusions for correctness." *Wheeler v. McPherson*, 2002 UT 16, ¶ 9, 40 P.3d 632 (citations omitted).

¶ 6 Blauer further argues that the UADA is unconstitutional inasmuch as it permits the Division of Antidiscrimination and Labor to arbitrarily deprive state employees of a remedy, despite purporting to grant such employees protection from discrimination.[2] "We review constitutional questions

---

2. Blauer frames this argument as a challenge to the trial court's dismissal of his UADA claims. We ultimately do not reach the merits of Blauer's constitutional claim, *see infra* ¶¶ 11–12, but even

if we had ultimately ruled in Blauer's favor, he would not be entitled to pursue his UADA claims in state court because, as the trial court pointed out, the UADA provides only an administrative

for correctness." *State v. Van Dyke,* 2009 UT App 369, ¶ 18, 223 P.3d 465.

## ANALYSIS

### I. Sovereign Immunity and Waiver

■ ¶ 7 Blauer first contests the trial court's determination that DWS is immune from suit under the ADA. Blauer points us to section 12202 of the ADA, which provides,

A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

42 U.S.C. § 12202. However, the United States Supreme Court has struck down the above-quoted section as an unconstitutional abrogation of the states' Eleventh Amendment immunity. *Board of Trustees of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 364, 373–74, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Blauer emphasizes the fact that the Eleventh Amendment protects states from suit only in federal court, not state court. However, state immunity from suits based on federal law exists irrespective of the Eleventh Amendment, and the United States Supreme Court has rejected the idea that state courts could be required "to entertain federal suits which are not within the judicial power of the United States and could not be heard in federal courts." *Alden v. Maine,* 527 U.S. 706, 712–13, 754, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Thus, the fact that the Eleventh Amendment does not explicitly protect states from federal claims brought in state court does not mean that Blauer can avoid DWS's claim of sovereign immunity by bringing his ADA claim in state court instead of federal court.

■ ¶ 8 Blauer next asserts that even if the State of Utah and its subdivisions are immune from ADA suits, Utah has waived

remedy for violations of its provisions, not a

that immunity. *See generally id.* at 737, 119 S.Ct. 2240 (observing that "a State may waive its sovereign immunity and consent to suit"). His argument relies on Utah's acceptance of ADA-related federal funding and its passage of the UADA.

■ ¶ 9 First, Blauer argues that Utah's receipt of federal funding for ADA-related programs constitutes a waiver of immunity with respect to ADA claims. Although Congress has the power to condition receipt of federal funds on a state's waiver of sovereign immunity pursuant to the spending clause, *see College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 686–87, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999), "the mere receipt of federal funds cannot establish that a State has consented to suit in federal court," *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 246–47, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), *superseded by statute on other grounds,* 42 U.S.C. § 2000d–7(a)(1) (imposing an unambiguous waiver of immunity on states that receive federal financial assistance in connection with the Rehabilitation Act and various other federal antidiscrimination statutes). Such a waiver occurs only where there has been " 'an unequivocal expression of congressional intent' " to make funding conditional on a waiver of immunity. *See id.* at 253–54, 105 S.Ct. 3142 (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), *superseded by statute on other grounds,* 28 U.S.C. § 1367); *see also Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) (explaining that in order for a federal act to abrogate states' sovereign immunity, Congress must "unequivocally express[ ] its intent to abrogate the immunity"). Federal courts have consistently held that Congress has not " 'manifest[ed] a clear intent to condition participation in the programs funded under the [ADA] on a State's consent to waive its constitutional immunity.' " *Panzardi–Santiago v. University of P.R.,* 200 F.Supp.2d 1, 9 (D.P.R.2002) (quoting *Atascadero,* 473 U.S. at 247, 105 S.Ct. 3142, and applying its analysis of the Rehabilitation Act

private right of action.

to the ADA); *accord, e.g., Shotz v. City of Plantation,* 344 F.3d 1161, 1174 (11th Cir. 2003) (holding that the liability provisions of the ADA are not conditioned on the receipt of federal funding and contrasting the ADA with the Rehabilitation Act, which, unlike the ADA, was enacted pursuant to the Constitution's spending clause); *Fields v. Department of Pub. Safety,* 911 F.Supp.2d 373, 379 & n. 6 (M.D.La.2012); *Dansby–Giles v. Jackson State Univ.,* 638 F.Supp.2d 698, 700–01 (S.D.Miss.2009); *Gary v. Georgia Dep't of Human Res.,* 323 F.Supp.2d 1368, 1372 (M.D.Ga.2004). But cf. *Pace v. Bogalusa City Sch. Bd.,* 403 F.3d 272, 287–88 (5th Cir.2005) (en banc) (holding that immunity from "ADA claims ... directed at architectural barriers" under Title II of the ADA may be waived by acceptance of federal funds because "the rights and remedies [provided by the ADA] are exactly the same as those provided under the Rehabilitation Act," which explicitly conditions receipt of federal funds on a waiver of immunity); *Covington v. McNeese State Univ.,* 996 So.2d 667, 673 (La.Ct.App.2008) (adopting the *Pace* court's analysis of ADA claims directed at architectural barriers). Thus, Blauer's assertion that Utah has waived immunity by accepting federal ADA funds is without merit.[3]

¶10 Blauer next contends that the Utah Legislature's passage of its own anti-discrimination act, the UADA, which grants state employees the right to pursue administrative remedies for discriminatory employment practices, constituted a waiver of sovereign immunity under the ADA. In support of this argument, Blauer relies on *Williamson v. Department of Human Resources,* 258 Ga. App. 113, 572 S.E.2d 678 (2002), in which the Georgia Court of Appeals held that the State of Georgia had waived its sovereign immunity from ADA claims by state employees when it enacted legislation granting such employees an administrative remedy under state law for discrimination in employment

based on disability. *See id.* at 681–82. However, other courts that have considered similar questions have reached the opposite conclusion. *See Perez v. Region 20 Educ. Serv. Ctr.,* 307 F.3d 318, 332 (5th Cir.2002) (holding that Texas's waiver of sovereign immunity with respect to Texas Labor Code claims in state court did not constitute a clear and unequivocal waiver of immunity with respect to ADA claims in federal court, even though one of the purposes identified by the Texas Labor Code was to " 'provide for the execution of the policies embodied in Title I of the [ADA]' " (quoting Tex. Lab.Code Ann. § 21.001(3))); *Acevedo Lopez v. Police Dep't,* 247 F.3d 26, 28–29 (1st Cir.2001) (holding that Puerto Rico's enactment of legislation prohibiting "employment discrimination on the basis of disability in a similar fashion as the ADA" was insufficient to waive immunity to claims brought under the ADA); cf. *Faibisch v. University of Minn.,* 304 F.3d 797, 799–800 (8th Cir.2002) (holding that a statutory provision permitting state employees to bring ADA claims in state court did not waive the state's immunity to ADA suits brought in federal court). The Supreme Court has held that "a State's consent to suit in its own courts is not a waiver of its immunity from suit in federal court." *Sossamon v. Texas,* —— U.S. ——, 131 S.Ct. 1651, 1658, 179 L.Ed.2d 700 (2011). Furthermore, due to "the vital role of the doctrine of sovereign immunity in our federal system," the Supreme Court has consistently held that a state's waiver of sovereign immunity, both with respect to "whether it may be sued" and "where it may be sued," must "be unequivocally expressed." *Pennhurst,* 465 U.S. at 99, 104 S.Ct. 900 (emphasis omitted). Contrary to the Georgia Court of Appeals' conclusion, we do not consider Utah's creation of an administrative remedy for disability discrimination in employment to constitute a clear and unequivocal waiver of its immunity from ADA suit either in state or in federal court.[4] It was the State of Utah's prerogative to

3. Accordingly, Blauer's contention that he should have been permitted to conduct discovery on the question of whether Utah received ADA funds also fails.

4. We also do not agree that representations made by the State of Utah regarding its intent to

comply with the ADA necessarily constitute a waiver of immunity. *See Dohmen v. Iowa Dep't for the Blind,* 794 N.W.2d 295, 303 (Iowa Ct.App. 2010) (holding that the Iowa Department for the Blind did not waive its immunity under the ADA by purporting to comply with it).

consent to be subject to administrative claims for violations of state law without necessarily also consenting to be sued in state or federal court for violations of comparable provisions of the ADA.[5]

¶ 11 Blauer also argues that a determination that his ADA claims are barred by sovereign immunity creates a catch-22 for state employees because the UADA permits the Division of Antidiscrimination and Labor (the Division) to "transfer a request for agency action ... to the federal [EEOC]" and provides that such a transfer constitutes a "commencement of an action under federal law" that "bars the commencement or continuation of any adjudicative proceeding before the [Labor Commission] in connection with the same claims." Utah Code Ann. § 34A–5–107(1)(d), (16)(a)-(b) (LexisNexis 2011). Blauer contends that these provisions unconstitutionally allow the Division to convert a state employee's state disability discrimination claims to federal ADA claims, knowing full well that the ADA claims will be barred by sovereign immunity, and thereby foreclose the employee from pursuing any remedy under either state or federal law.

¶ 12 Blauer lacks standing to raise this claim, however, because his case was not transferred to the EEOC by the Division and the Division therefore was not responsible for triggering the UADA's exclusive remedy provision. *See generally Provo City Corp. v. Thompson*, 2004 UT 14, ¶ 9, 86 P.3d 735 ("In order to meet the basic requirements of standing, a party must allege that he or she has suffered or will imminently suffer an injury that is fairly traceable to the conduct at issue such that a favorable decision is likely to redress the injury."). Rather, Blauer himself filed a claim with the EEOC, which, in turn, gave him permission to pursue a civil action.[6] Thus, it was Blauer's own actions that led to the commencement of a federal suit and barred him from pursuing a remedy under the UADA. We therefore need not determine whether a transfer of a UADA claim to the EEOC by the Division would constitute an unconstitutional deprivation of a remedy for injury, *see* Utah Const. art. 1, § 11, or a waiver of sovereign immunity with respect to that claim.

## CONCLUSION

¶ 13 We hold that DWS is immune from suit under the reasonable accommodation provisions of the ADA and that the State of Utah has not waived its sovereign immunity under the ADA either by accepting federal ADA funds or by enacting the UADA. Furthermore, we decline to consider Blauer's constitutional challenge to the UADA be-

---

5. Blauer asserts that even if he cannot seek a money judgment against DWS due to sovereign immunity, he should be permitted to seek reinstatement under the ADA because equitable claims are recognized under Utah law as being excepted from general sovereign immunity rules. *See El Rancho Enters., Inc. v. Murray City Corp.*, 565 P.2d 778, 779–80 (Utah 1977). DWS counters that the equitable relief Blauer seeks—reinstatement—is not available because his termination has been fully litigated. *See Blauer II*, 2007 UT App 280, ¶¶ 1–3, 167 P.3d 1102 (explaining that the Career Services Review Board had affirmed Blauer's termination for failing to return to work within a year of his beginning FMLA leave and upholding that decision based on Blauer's failure to timely petition this court for judicial review). Blauer asserts that reinstatement is still a valid remedy and that he should be "permitted to adduce evidence that both his departure from DWS in 2003, and his termination in 2004, were the direct and proximate result of DWS's knowing refusal to accommodate his disability." Since this is essentially the same argument Blauer used to contest his termination initially, *see* Brief for Petitioner at 15–17, *Blauer II*, 2007 UT App 280, 167 P.3d 1102, his pursuit of reinstatement via his ADA claims appears to be nothing more than an attempt to relitigate the same issues that have already been decided. And the fact that this court did not reach the merits of the termination challenge due to the untimeliness of Blauer's petition for appellate review, *see Blauer II*, 2007 UT App 280, ¶ 1, 167 P.3d 1102, does not negate the finality of the termination decision, as Blauer appears to suggest. The matter is therefore settled, and reinstatement is no longer an available remedy. Because this leaves Blauer with no equitable claim to pursue, the asserted exception to sovereign immunity does not apply.

6. Blauer appears to rely on this grant of permission in support of his waiver argument, asserting that it was the State of Utah that notified him of his right to sue. However, the letter informing him of that right was sent by the Civil Rights Division of the United States Department of Justice, not the State of Utah. Thus, his claim that the State granted him the right to sue is inaccurate.

cause Blauer's alleged injuries did not arise as a result of the contested provisions and he therefore lacks standing to challenge them. Accordingly, we affirm the trial court's dismissal of Blauer's ADA and UADA claims.