2019 UT App 91

# THE UTAH COURT OF APPEALS

REBEKAH CONNER,
Appellant,
*v.*
DEPARTMENT OF COMMERCE, STATE OF UTAH,
AND FRANCINE GIANI,
Appellees.

Opinion
No. 20160909-CA
Filed May 23, 2019

Third District Court, Salt Lake Department
The Honorable Matthew Bates
No. 130907251

C. Reed Brown and Elizabeth B. Grimshaw,
Attorneys for Appellant

Kristin A. VanOrman, S. Spencer Brown, and Ashley
F. Leonard, Attorneys for Appellees

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES GREGORY K. ORME and JILL M. POHLMAN concurred.

HAGEN, Judge:

¶1     Rebekah Conner appeals from a dismissal of her wrongful termination claim. The last business day before trial, the Department of Commerce, State of Utah, and Francine Giani (collectively, the Defendants) filed a motion for judgment on the pleadings under rule 12(c) of the Utah Rules of Civil Procedure, asserting that they were immune from suit due to governmental immunity. The district court deferred consideration of the motion until after trial. The jury found the Defendants liable for wrongful termination and awarded Conner $240,000 in damages. After trial, the district court granted the rule 12(c) motion on the ground that the claim tried to the jury—wrongful

termination in violation of public policy—is a tort claim for which the government has not waived immunity. The court rejected Conner's argument that her amended complaint could be reasonably read to state a statutory claim for wrongful termination. The court also denied Conner's subsequent motion under rule 15(b) of the Utah Rules of Civil Procedure to amend the pleadings to reflect that claim. Accordingly, the court vacated the jury's verdict for wrongful termination and entered judgment on the pleadings, effectively immunizing the Defendants from the jury's verdict.

¶2    We conclude that the district court properly entered judgment on the pleadings. Even when construed in the light most favorable to Conner, her amended complaint did not state a viable statutory claim for the simple reason that the statute on which she relies does not provide for a private right of action. For that same reason, the district court also properly denied Conner's motion to amend the pleadings to state such a non-existent cause of action. We further conclude that the Defendants did not waive their governmental immunity defense and that the district court did not exceed its discretion when it chose to entertain the Defendants' rule 12(c) motion filed on the eve of trial. Finally, Conner did not preserve her procedural due process claim below and does not argue an exception to preservation on appeal. Therefore, we affirm the district court's judgment on the pleadings.

## BACKGROUND

¶3    Conner sued the Defendants after she was fired in 2013 from her job at the Department of Commerce. Conner had served as the administrative assistant to the director, Giani, for eight years. As a schedule AD employee in a confidential relationship with and reporting directly to the department head, Conner was exempt from the career service provisions of the

Utah State Personnel Management Act (USPMA).[1] Utah Code Ann. § 67-19-15 (LexisNexis 2013).[2] According to Conner, Giani did not like or trust the leadership of the Utah Attorney General's Office, where Conner's husband worked as a special agent. Conner claims that she was fired "based on Giani's troubled relationship with the A.G.'s office and the mere fact that Conner's husband was employed there."

¶4 This appeal relates to the first cause of action alleged in Conner's amended complaint.[3] Conner titled this cause of action as "Wrongful Termination Against Public Policy (Vindication of Rights Created by Statute to be Free from Discrimination on

---

1. At-will employees are statutorily classified under Schedule A of the USPMA while career service employees are statutorily classified under Schedule B. "Career service systems were designed to protect public employees from unfair personnel practices occurring with political changes." Report to the Utah Legislature, *A Limited Review of the State's Career Service System* (July 2010), https://le.utah.gov/audit/10_08rpt.pdf [https://perma.cc/K8VL-LD6W]. Among other protections, "[c]areer service employees have the right to grieve certain personnel actions, a right not granted to noncareer-service employees." *Id.*

2. Throughout this opinion, we refer to the provisions of the Utah Code in effect at the time of Conner's termination, unless otherwise noted.

3. Conner also claimed that the Defendants failed to pay her severance benefits mandated by Utah law (second cause of action) and, in the alternative, that the failure to pay severance benefits breached the implied covenant of good faith and fair dealing (third cause of action). Conner prevailed at trial on her claim for severance benefits, and the Defendants have not challenged that verdict and judgment on appeal.

the Basis of Political Affiliation or Other Nonmerit Factor)." Conner cited Utah Code section 67-19-18(2) of the USPMA and rule R477-2-3(2) of the Utah Administrative Code, both of which provide that an employee may not be dismissed because of "political affiliation." Conner alleged that the statute and rule reflect a substantial public policy against terminating an employee based on political affiliation, which the Defendants violated by firing Conner based on her husband's employment. She also alleged that she "has a statutory right to be free from discrimination on the basis of political affiliation."[4]

¶5     The Defendants filed an answer to the amended complaint alleging two immunity-based affirmative defenses. The thirteenth defense stated that Conner's claims were "barred by the doctrines of absolute and qualified immunity." The fourteenth defense stated that Conner's claims were barred because she had "failed to comply with the applicable requirements of the Governmental Immunity Act" (GIA). Although the Defendants later withdrew the fourteenth defense concerning whether Conner had complied with the requirements of the GIA, they did not withdraw the thirteenth defense.

¶6     The Defendants did not move for judgment based on their immunity from suit prior to the pretrial motion deadline. The district court denied the Defendants' motion for partial summary judgment based on other grounds, and the case was set for trial.

---

4. Although Conner's briefs do not explain how her husband's employment in another part of state government constitutes "political affiliation," the jury found that she was terminated for her "political affiliation," and that finding is not at issue on appeal.

¶7     One business day before trial, the Defendants filed a rule 12(c) motion for judgment on the pleadings, arguing that Conner's wrongful termination claim was barred by governmental immunity. *See* Utah R. Civ. P. 12(c). Specifically, the Defendants argued that Conner's first cause of action was a tort claim for wrongful termination in violation of public policy for which governmental immunity had not been waived.

¶8     Conner moved to strike the motion for judgment on the pleadings, arguing that it was untimely and that the governmental immunity defense had been waived and abandoned by the Defendants. The district court requested briefing on the rule 12(c) motion but did not continue the trial. The district court "made it clear that [it] was deferring on ruling on the motion and that [it] . . . would rule on the motion after trial."

¶9     The jury returned a verdict in favor of Conner, finding that Conner was terminated due to her political affiliation and awarding her $240,000 in compensatory damages.

¶10     After full briefing post-trial, the district court heard argument on the rule 12(c) motion. The district court recognized that it "could have denied this motion for being untimely" as the motion "was filed literally on the eve of trial." Although the court observed that governmental immunity "should have been raised in a 12(b)(6) or in a 12(c) [motion] right after the answer was filed," it elected to entertain the motion because of the "importance of the issues raised in the motion" and because, when suing a governmental entity, a plaintiff is "responsible for understanding [governmental immunity], knowing it, preparing for it, [and] arguing alternative causes of action." On the merits, the district court construed Conner's amended complaint to assert "a wrongful termination tort" for which governmental immunity had not been waived under the GIA. Accordingly, the

court granted the Defendants' motion for judgment on the pleadings.

¶11 In its oral ruling from the bench, the district court indicated it was vacating the jury's verdict. In a subsequent written ruling, however, the court concluded that vacating the jury's verdict was "unnecessary and improper." The court explained,

> The question of governmental immunity was not put to the jury. Rather it was reserved for judgment by the Court on the pleadings. Because the jury never decided the issue of governmental immunity, there is no reason to vacate the jury's verdict with respect to the first cause of action. Instead, the jury's verdict stands and the Court's order has the effect of immunizing [the] Defendants from the verdict and dismissing the cause of action.

¶12 Conner subsequently filed a rule 52(b) and 59 motion to alter or amend the judgment and for a new trial, along with a rule 15(b) motion to amend the pleadings to conform to the evidence at trial. *See* Utah R. Civ. P. 52(b), 59(a)(7), 15(b)(1). Conner argued that her wrongful termination claim could be construed either as a claim sounding in tort, which would be barred by governmental immunity, or as a statutory enforcement claim. Conner argued that in granting the Defendants' rule 12(c) motion, the district court erred in not construing the pleadings more liberally to include a claim that she was terminated in violation of a statutory right. In the alternative, she argued that such a statutory enforcement claim was tried by implied consent and that the pleadings must be amended under rule 15(b) to reflect the claim actually tried to the jury. The court denied Conner's motions, concluding that the "pleadings correctly reflect the claim that was actually tried to the jury: wrongful

termination in violation of public policy," which was "a tort claim of wrongful termination."

¶13 Conner appeals the district court's grant of the Defendants' rule 12(c) motion, which resulted in the dismissal of the wrongful termination claim, and the denial of her rule 15(b) motion, in which the court refused to amend the pleadings to include a claim of statutory enforcement.

ISSUES AND STANDARDS OF REVIEW

¶14 Conner makes two related arguments as to why her first cause of action should not have been dismissed. She argues, first, that the district court erred in granting the Defendants' motion for judgment on the pleadings under rule 12(c) of the Utah Rules of Civil Procedure, and second, that the district court erred when it declined to amend the pleadings to conform to the evidence presented at trial under rule 15(b) of the Utah Rules of Civil Procedure. Specifically, she argues that the district court should have either construed her amended complaint or amended the pleadings to assert a statutory cause of action that could survive the affirmative defense of governmental immunity. Both issues require us to consider the threshold question of whether such a statutory cause of action exists. "Whether a particular statute provides a private right of action is a question of statutory interpretation," *Buckner v. Kennard*, 2004 UT 78, ¶ 41, 99 P.3d 842, which we review for correctness, *Marion Energy, Inc v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 12, 267 P.3d 863.

¶15 Next, we address Conner's contention that the Defendants should have been precluded from raising the affirmative defense of governmental immunity on the eve of trial. "We review the trial court's findings of fact for clear error and its conclusions of law for correctness." *Hart v. Salt Lake County Comm'n*, 945 P.2d 125, 132 (Utah Ct. App. 1997). We

review the district court's interpretation and application of the rules of civil procedure for correctness and will reverse only if the appellant shows "error that was substantial and prejudicial." *Hofheins v. Bajio Mountain West LLC*, 2017 UT App 238, ¶¶ 26, 32, 414 P.3d 531 (quotation simplified).

¶16 Finally, Conner contends that her right to due process was violated because the district court granted the Defendants' rule 12(c) motion without providing Conner an opportunity to modify her presentation at trial. "Constitutional issues, including questions regarding due process, are questions of law that we review for correctness." *Osburn v. Bott*, 2011 UT App 138, ¶ 4, 257 P.3d 1028 (quotation simplified). But where the constitutional issue is unpreserved, the appellant must establish an exception to the preservation requirement. *See In re A.W.*, 2018 UT App 217, ¶ 26, 437 P.3d 640. Unless an exception to the preservation rule applies, an appellate court will not review unpreserved constitutional claims. *Id.*

ANALYSIS

¶17 The overarching issue on appeal is whether Conner's complaint adequately stated, or should have been amended to state, a claim that is not barred by the GIA. "Generally, to determine whether a governmental entity is immune from suit under [the GIA], we apply a three-part test, which assesses (1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver." *Van de Grift v. State*, 2013 UT 11, ¶ 8, 299 P.3d 1043 (quotation simplified).

¶18 On appeal, the parties do not dispute that the first part of the test is met, because the Defendants' actions with respect to Conner's employment qualify as a governmental function.

Concerning the second part, our supreme court has held that termination of employment "for a reason that contravenes a clear and substantial public policy gives rise to a cause of action in tort," *Hansen v. America Online, Inc.*, 2004 UT 62, ¶ 7, 96 P.3d 950 (citing *Peterson v. Browning*, 832 P.2d 1280, 1284 (Utah 1992)), for which immunity has not been waived, *see Broadbent v. Board of Educ. of Cache County School Dist.*, 910 P.2d 1274, 1277 (Utah Ct. App. 1996). Therefore, if Conner's first cause of action is properly characterized as a tort claim for wrongful termination in violation of public policy, immunity has not been waived and there is no need to look for an exception to waiver under the third part of the test.

¶19　Thus, the crux of this appeal is whether Conner's first cause of action could be properly construed or amended to state a "statutory enforcement" claim instead of a wrongful termination tort claim for which governmental immunity has not been waived.[5] Because we conclude that the statute on which Conner relies does not create a private right of action, Conner's claims could not be construed or amended in a way that would survive the defense of governmental immunity.

## I. No Statutory Cause of Action

¶20　On appeal, Conner makes two alternative arguments that rely on the assumption that there is a private statutory cause of action for violation of Utah Code section 67-19-18(2) and rule R477-2-3(2) of the Utah Administrative Code. As an initial matter, Conner contends that the district court should have denied the Defendants' rule 12(c) motion for judgment on the

---

5. Conner presumes that governmental immunity would be waived for a claim of "statutory enforcement." Because we conclude that there is no private right of action under Utah Code section 67-19-18(2), we have no need to address that premise.

pleadings because, when construed in the light most favorable to her as the nonmoving party, her amended complaint could be read as stating a statutory enforcement claim. Alternatively, she argues that such a statutory enforcement claim was tried by implied consent and that the district court should have granted her motion to amend the pleadings under rule 15(b) to reflect the claim actually tried to the jury. *See Fisher v. Davidhizar*, 2011 UT App 270, ¶ 9, 263 P.3d 440 (explaining that where an issue is tried by the parties' express or implied consent, the court "must treat the claim as if it were properly raised in the pleadings" (quotation simplified)).

¶21 In her amended complaint, Conner titled her first cause of action "Wrongful Termination Against Public Policy," which, as the district court noted, is "a well-recognized tort claim in Utah." However, the label attached to the claim is not necessarily dispositive. "Our rules of pleading require that a cause be made out, but not necessarily that it always be correctly labeled." *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 22, 158 P.3d 1088. Where a complaint is "capable of more than one construction," only one of which is barred by governmental immunity, our supreme court has "required that ambiguities be construed in a manner that sustains the complaint." *Bingham v. Roosevelt City Corp.*, 2010 UT 37, ¶ 45, 235 P.3d 730; *see also Baker v. Angus*, 910 P.2d 427, 432 (Utah Ct. App. 1996) (viewing the complaint in the light most favorable to the plaintiffs to state a claim exempt from governmental immunity).

¶22 Conner notes that there are three exceptions to the general rule that an employer's decision to terminate an at-will employee, like her, is presumed valid. An employee can overcome the presumption of validity by demonstrating that

> (1) there is an implied or express agreement that the employment may be terminated only for cause or upon satisfaction of some agreed-upon

condition; (2) a statute or regulation restricts the right of an employer to terminate an employee under certain conditions; or (3) the termination of employment constitutes a violation of a clear and substantial public policy.

*Hansen*, 2004 UT 62, ¶ 7 (quotation simplified).

¶23 The district court ruled that Conner had pled and tried a tort claim for wrongful termination in violation of public policy. An at-will employee may bring a claim under the third exception when "the public interest is so strong and the policy so clear and weighty that we should place the policy beyond the reach of an at-will employment contract." *Ray v. Wal-Mart Stores, Inc.*, 2015 UT 83, ¶ 12, 359 P.3d 614 (quotation simplified). In determining "whether the legal right at issue reflects the type of clear and substantial Utah public policy that qualifies as an exception to the at-will rule," courts consider, among other things, "whether the policy at issue is reflected in authoritative sources of state public policy." *Id.* ¶ 14. "A policy is recognized in an authoritative source of state public policy if it is plainly defined by legislative enactments, constitutional standards, or judicial decisions." *Id.* ¶ 15 (quotation simplified).

¶24 In her amended complaint, Conner cited to Utah Code section 67-19-18(2) of the USPMA to show that termination of an employee based on political affiliation is against public policy in Utah. The USPMA provides, in part, that an employee may not be dismissed because of "political affiliation, or other nonmerit factor." Utah Code Ann. § 67-19-18(2) (LexisNexis 2013). A knowing violation of a provision of the USPMA is punishable as a class A misdemeanor. *See id.* § 67-19-29. Conner also quoted rule R477-2-3(2) of the Utah Administrative Code, which implements the USPMA and states that employment actions may not be based on "political affiliation . . . or any other non-job related factor." Conner then explained how the cited statute and

rule supported her claim of wrongful termination in violation of public policy:

> The fact that both the state legislature and the executive branch through its rules-making process have expressly stated that Utah State Government employers . . . may not discriminate against employees on the basis of an employee's political affiliations, or discriminate against an employee for any reason that is not related to job performance, demonstrates that this is a substantial public policy. Likewise, the fact that the legislature criminalized behavior that would violate the [USPMA] also supports the fact that this is a substantial public policy.

¶25    As the district court recognized, the alleged "violation of Rule 477-2-3(2) and Utah Code section 67-19-18(2) was put to the jury because it was the public policy that underpinned [Conner's] tort claim." In other words, the references to the governing statute and regulation were offered "to demonstrate a substantial public policy against terminating at-will employees for political affiliations." Our courts frequently look to statutes "as a source of clear and substantial public policy," even when the statute does not create a private statutory cause of action. *Touchard v. La-Z-Boy, Inc.*, 2006 UT 71, ¶¶ 21–22, 148 P.3d 945; *see also Petersen v. Browning*, 832 P.2d 1280, 1282 (Utah 1992) (holding that "the public policy exception applies in this state when the statutory language expressing the public conscience is clear and when the affected interests of society are substantial"); *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1043 (Utah 1989) ("Public policy is most obviously, but not exclusively, embodied in legislative enactments."). Moreover, in pretrial proceedings, Conner affirmatively represented that her claim sounded in tort. On this record, the district court correctly determined that

Conner's first cause of action was pled and tried as a tort claim for wrongful termination in violation of public policy.

¶26 Given that such a tort claim is barred by governmental immunity, Conner argues that her amended complaint can be alternatively construed (or amended) to state a statutory claim. But, as the Defendants point out, Conner's argument assumes her statutory claim "is a valid cause of action." The Defendants maintain that the Utah Code does not provide a private right of action for state employees alleging discrimination based on "political affiliation" in violation of section 67-19-18(2). We agree. Conner has not demonstrated that the USPMA should be construed as creating a private right of action for a violation of section 67-19-18(2).

¶27 "[T]he courts of this state are not generally in the habit of implying a private right of action based upon state law, absent some specific direction from the Legislature." *Broadbent v. Board of Educ. of Cache County School Dist.*, 910 P.2d 1274, 1278 (Utah Ct. App. 1996). Because it is a matter of statutory interpretation, we "look first to the plain language of the statute for an express indication that a private right of action was intended." *Machan v. UNUM Life Ins. Co. of Am.*, 2005 UT 37, ¶ 24, 116 P.3d 342. "A statute's mere prohibition of a certain act does not imply creation of a private right of action for its violation." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 313 (2012) (discussing the presumption against an implied right of action). Instead, "[t]he creation of such a right must be either express or clearly implied from the text of the statute." *Id.*

¶28 Unlike other provisions of the Utah Code, the USPMA does not expressly state a private right of action. Where the Utah Legislature has intended to establish a private right of action, it has done so expressly. "The Utah Code has many examples of the explicit language which creates such rights, none of which require anyone to add language or make inferences to impart the

full meaning of the statute." *Miller v. Weaver*, 2003 UT 12, ¶ 21, 66 P.3d 592. For example, the Utah Protection of Public Employees Act provides that a public employee may assert a claim of retaliatory action by "bringing a civil action for appropriate injunctive relief, damages, or both." Utah Code Ann. § 67-21-4(1)(c)(ii) (LexisNexis 2016).

¶29 The USPMA contains no such provision. Instead, the USPMA provides that a knowing violation of a provision of the chapter is punishable as a class A misdemeanor. *See id.* § 67-19-29 (2013). "When a statute makes certain acts unlawful and provides criminal penalties for such acts, but does not specifically provide for a private right of action, we generally will not create such a private right of action." *Youren v. Tintic School Dist.*, 2004 UT App 33, ¶ 4, 86 P.3d 771.

¶30 Moreover, it would be inconsistent with the legislature's statutory scheme to imply a private right of action in this case. "Utah courts have rarely, if ever, found a Utah statute to grant an implied private right of action." *Buckner v. Kennard*, 2004 UT 78, ¶ 43, 99 P.3d 842. The reluctance to imply a private right of action "is particularly strong when the Legislature has already designated a method of resolution through an administrative agency specifically empowered to handle issues such as the discipline or termination" of public employees. *Id.* ¶ 49 (quotation simplified). "Even where there is a strong public policy, as in discrimination, the legislative body retains the right to specify the remedies and course of action available for violations of a statute it has enacted to pursue such policy." *Id.* ¶ 52. For example, the Utah Antidiscrimination Act (the UADA) "prohibits a number of forms of employment discrimination, but limits a victim's recourse by providing that the exclusive remedy under state law for employment discrimination is the administrative procedure set forth in the [UADA]." *Id.* ¶ 52 (quotation simplified); *see also* Utah Code Ann. § 34A-5-107(15) (LexisNexis 2013).

¶31    Here, in addition to the criminal penalty, the 2013 version of the USPMA provides administrative remedies for discriminatory employment actions. First, an employee alleging employment actions based on race, color, sex, retaliation, pregnancy or childbirth, age, religion, national origin, or disability, which are prohibited by the UADA,[6] *see* Utah Code Ann § 34A-5-107(15), "may submit a written grievance to the department head where the alleged unlawful act occurred" and, if dissatisfied with the decision, may submit a complaint to the Division of Antidiscrimination and Labor, whose decision is subject to further agency and judicial review, *id.* § 67-19-32(1). Second, the USPMA provides that "[a]ll grievances based upon a claim or charge of injustice or oppression, including dismissal from employment, resulting from an act, occurrence, commission, or condition shall be governed by Chapter 19a, Grievance Procedures, and Title 63G, Chapter 4, Administrative Procedures Act." *Id.* § 67-19-30(2). Those grievance procedures apply only to career service employees. *Id.* § 67-19a-301. Third, the USPMA delegates authority to the executive director of the Department of Human Resource Management to establish rules governing executive branch dismissals. *Id.* § 67-19-18(3). These rules, which apply to both career service and exempt employees, Utah Admin. Code R477-2-1 (LexisNexis 2013), provide that any "employee who alleges unlawful discrimination may: (a) submit a complaint to the agency head; and (b) file a charge with the Utah Labor Commission" or "directly with the [Equal Employment Opportunity Commission (EEOC)]," *id.* R477-2-3(3).

¶32    Conner argues that these administrative procedures provide little protection in her particular case because

---

6. The current version of the UADA also prohibits employment actions based on sexual orientation or gender identity. *See* Utah Code Ann. § 34A-5-107 (LexisNexis Supp. 2018).

(1) "political affiliation" is not protected by the UADA; (2) as an employee who was in a confidential relationship with and reported directly to a department head, she was exempt from the grievance procedures provided for career service employees; and (3) "neither the Utah Antidiscrimination Division nor the EEOC had jurisdiction to investigate discrimination based on 'political affiliation,'" so her only remedy under the rules was to submit a complaint to the agency head. We agree that the statutory scheme plainly affords more protection to employees alleging discrimination on the basis of race, color, sex, retaliation, pregnancy or childbirth, age, religion, national origin, or disability under the UADA than to employees alleging discrimination based on "political affiliation, or other non-merit factor" under section 67-19-18. It also provides more protection to career service employees who are entitled to grievance procedures not available to exempt employees in special positions. Yet even employees in those more highly protected situations have no private right of action and are limited to the administrative procedures and judicial review provided by statute. *See Blauer v. Department of Workforce Services*, 2014 UT App 100, ¶ 6 n.2, 331 P.3d 1 (recognizing that "the UADA provides only an administrative remedy for violations of its provisions, not a private right of action"). Affording more protection to Conner by implying a private right of action for career service exempt employees alleging discrimination based on "political affiliation" would be inconsistent with this statutory scheme.

¶33 In the absence of any express direction or clear implication in the language of the statute, we will not assume that the legislature intended to create a private right of action for violation of section 67-19-18(2).[7] Because Conner has not shown

_____

7. Conner argues that the absence of a private right of action under Utah Code section 67-19-18(2) would violate the "open

(continued…)

that such a cause of action exists, the district court did not err in failing to construe or amend her complaint to state such a claim.

## II. Timeliness

¶34    Conner also argues that the district court should not have entertained the rule 12(c) motion because the Defendants waived their defense of governmental immunity by failing to plead and pursue this defense. "Governmental immunity is an affirmative defense to suits against state or local government." *Buckner v. Kennard*, 2004 UT 78, ¶ 35, 99 P.3d 842. As an affirmative defense, governmental immunity can be waived. *Hart v. Salt Lake County Comm'n*, 945 P.2d 125, 133 (Utah Ct. App. 1997).

¶35    In *Hart*, this court affirmed the district court's conclusion that the Salt Lake County Commission waived its governmental immunity defense. *Id.* Although the County raised the affirmative defense in its answer, during oral argument on its motion for summary judgment, the County "in open court . . . waived and abandoned the governmental immunity defense." *Id.* at 131 n.4 (quotation simplified). The County made no attempt to raise the defense "through the conclusion of trial and the jury verdict." *Id.* (quotation simplified). Six months after the trial ended, the County moved for judgment notwithstanding the verdict based on governmental immunity. *Id.* at 133. In concluding that the County's actions waived the governmental immunity defense, this court emphasized that defendants have the burden of proving governmental immunity at trial and that

(…continued)

courts" provision of article I, section 11 of the Utah Constitution. The open courts provision does not create a remedy or cause of action where none otherwise exists, but instead limits the legislature's power to abolish an existing remedy. *See Puttuck v. Gendron*, 2008 UT App 362, ¶ 19, 199 P.3d 971.

the County "wholly failed to both argue governmental immunity at trial and to produce any evidence supporting that argument." *Id.* "As a result of the County's inaction and failure to meet its burden at trial," this court did not disturb "the [district] court's findings or conclusion that the County waived its affirmative defense of governmental immunity." *Id.*

¶36 Unlike the County in *Hart*, the Defendants' actions during the course of this litigation did not waive governmental immunity. Instead, while they were not as diligent as they could have been, the Defendants adequately pled and pursued the affirmative defense.

¶37 First, the Defendants adequately pled the affirmative defense of governmental immunity in their answer to the amended complaint. The Utah Rules of Civil Procedure require that pleadings "be construed to do substantial justice." Utah R. Civ. P. 8(f). In accordance with this rule, courts construe pleadings in favor of the pleader and "require the parties to proceed to the merits, if such a course is permissible, after giving the allegations and averments contained in the pleadings, and the necessary inferences arising therefrom, a liberal construction and application." *Harman v. Yeager*, 110 P.2d 352, 354 (Utah 1941) (quotation simplified).

¶38 As their thirteenth defense, the Defendants asserted that Conner's claims were "barred by the doctrines of absolute and qualified immunity." Conner argues that this language did not adequately plead a defense of governmental immunity under the GIA. Although the terms absolute and qualified immunity are more commonly used to refer to a type of immunity arising under federal law,[8] the Utah Supreme Court has also applied

---

8. Under qualified immunity, "government officials are not subject to damages liability for the performance of their

(continued…)

those terms when discussing immunity conferred by the GIA. In this context, "qualified immunity" simply means "immunity subject to exceptions," *Hansen v. Salt Lake County*, 794 P.2d 838, 842 (Utah 1990), and refers to the GIA's grant of "general qualified immunity for governmental functions" subject to the exceptions "as . . . otherwise provided in this chapter," *Provo City Corp. v. State ex rel. Dep't of Transp.*, 795 P.2d 1120, 1124 (Utah 1990). In contrast, "absolute immunity" would refer to "unqualified immunity" not subject to the waivers provided in the GIA. *Id.*

¶39   In ruling that the Defendants had adequately pled a governmental immunity defense, the district court noted this line of cases. While the court recognized that the Defendants could "have phrased [their thirteenth defense] more artfully in their answer," it ultimately concluded that "by asserting the defenses of qualified immunity and absolute immunity," the Defendants "affirmatively raised the defense of immunity under the GIA." Given our liberal pleading standards and in light of the case law using the terms absolute and qualified immunity in the context of the GIA, the district court correctly ruled that the answer adequately asserted the affirmative defense of governmental immunity.

¶40   Conner also argues that the Defendants waived the governmental immunity defense when they agreed to withdraw

---

(…continued)
discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quotation simplified). Absolute immunity applies only when a public official is performing "special functions" that "deserve absolute protection from damages liability." *Id.* at 268–69.

their fourteenth defense. The fourteenth defense alleged that Conner had "failed to comply with the applicable requirements of the [GIA] and, therefore, her claims in this civil action [were] barred." The GIA provides that a plaintiff's claim against a governmental entity or employee is barred unless the plaintiff complies with the requirement of filing a timely written notice of claim. *See* Utah Code Ann. § 63G-7-402 (LexisNexis 2016). Withdrawing this defense related to whether Conner had complied with the applicable procedural requirements of the GIA did not waive the argument that the Defendants were immune from suit. Indeed, in the same correspondence withdrawing the fourteenth defense, the Defendants' attorney stated, "My client will not agree to withdraw its Thirteenth Defense in this matter." Thus, the Defendants' conduct in this case is readily distinguishable from the type of express abandonment that occurred in *Hart*.

¶41 Second, the Defendants in this case did not wait until after trial to raise the governmental immunity defense. As we pointed out in *Hart*, the defendant has the burden of proving an affirmative defense at trial. By failing to raise governmental immunity until six months after trial, the County in *Hart* failed to meet that burden. 945 P.2d at 133. But Conner has not directed us to any authority that would require a defendant to establish an affirmative defense prior to trial, although doing so by means of a dispositive motion would surely be more efficient and, in this case, may have obviated the need for discovery and trial.[9] The affirmative defense of governmental immunity, in particular, "conceptually arises subsequent to the question of

---

9. It is uncertain whether resolution of the immunity issue earlier in this case would have avoided trial. Conner ultimately prevailed on her claims for severance benefits. The parties may or may not have settled those claims had the wrongful termination claim been dismissed before trial.

whether there is tort liability in the first instance." *Ferree v. State*, 784 P.2d 149, 153 (Utah 1989), *overruled on other grounds by Scott v. Universal Sales, Inc.*, 2015 UT 64, 356 P.3d 1172. As noted, judicial economy may have been better served had the Defendants brought the motion in time to avoid or substantially limit the scope of trial, but their failure to more diligently pursue the affirmative defense prior to trial does not necessarily amount to waiver.

¶42    Relatedly, Conner contends that the district court violated the timing requirement in rule 12(c) of the Utah Rules of Civil Procedure when it allowed the Defendants to file such a motion the day before trial. Rule 12(c) requires that the motion be brought "after the pleadings are closed but within such time as not to delay the trial." Utah R. Civ. P. 12(c). In this case, the motion was filed one business day before the scheduled trial. As the district court here recognized, it would have been well within its discretion to deny the motion as untimely. *See Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 17, 163 P.3d 615 (recognizing that "a trial court does not abuse its discretion when it denies as untimely last minute motions on the eve of trial"). But the question on appeal is whether rule 12(c) prohibits the district court from entertaining the motion under these circumstances.

¶43    The district court did not violate the rules of civil procedure or exceed its discretion by reserving its ruling on the motion for judgment on the pleadings until after trial. *See Maxfield v. Herbert*, 2012 UT 44, ¶ 11, 284 P.3d 647 (recognizing that "[w]ithin the bounds set by rule and statute, . . . a district court's management of its docket and trial schedule is reviewed for an abuse of discretion" (quotation simplified)). Given the district court's handling of the rule 12(c) motion, the late filing did not in fact delay trial. Although the motion could not have been fully briefed and resolved "within such time as not to delay trial," the rules do not require district courts to hear and

resolve a rule 12(c) motion prior to trial. To the contrary, the rules expressly allow a court to defer its ruling on a rule 12(c) motion. Rule 12(d) provides that a rule 12(c) motion "shall be heard and determined before trial on application of any party, unless the court orders that the hearings and determination thereof be deferred until the trial." Utah R. Civ. P. 12(d). Significantly, rule 12(d) expressly contemplates a deferred ruling even though, by definition, a motion for judgment on the pleadings would not rely on the evidence developed or the facts found at trial. When Conner moved to strike the rule 12(c) motion as untimely, the district court "made it clear that [it] was deferring on ruling on the motion and that [it] . . . would rule on the motion after trial."

¶44    Although rule 12(d) speaks of deferring a ruling "until the trial," the district court's decision to rule on the matter after trial is consistent with the concept that governmental immunity does not conceptually arise until after liability is determined. *See Ferree*, 784 P.2d at 153. "Generally, it is appropriate to address liability issues . . . prior to addressing the affirmative defense of the defendant's immunity from suit." *Lyon v. Burton*, 2000 UT 19, ¶ 12, 5 P.3d 616. As the district court explained, "[t]he question of governmental immunity was not put to the jury," because it was a purely legal issue that the district court "reserved for judgment by the Court on the pleadings." Once the jury found the Defendants liable, the court's ruling had "the effect of immunizing [the] Defendants from the verdict."

¶45    Judicial economy may be better served by performing the immunity analysis first, especially where, as here, that analysis ends the inquiry. *See Ledfors v. Emery County School Dist.*, 849 P.2d 1162, 1164 (Utah 1993) (citing cases in which the court has "performed the immunity analysis first, typically when it ended the inquiry"). But, while a pretrial ruling in this case may well have been preferable, we cannot say that the district court was required to resolve the question of governmental

immunity before the jury determined liability. Therefore, the district court's handling of the rule 12(c) motion did not violate the rules of civil procedure or otherwise constitute an abuse of discretion.

## III. Due Process

¶46 Finally, Conner contends that the timing of the rule 12(c) motion and the court's ruling deprived her of due process. "Procedural due process requires, at a minimum, timely and adequate notice and an opportunity to be heard in a meaningful way." *McBride v. Utah State Bar*, 2010 UT 60, ¶ 16, 242 P.3d 769 (quotation simplified). This encompasses the right to be heard both "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation simplified).

¶47 Conner claims that the Defendants, intentionally or unintentionally, "sandbagged" her by waiting to raise the governmental immunity defense until it was too late for her to pursue an alternative claim for statutory enforcement at trial.[10] She asserts that she "had a right to know what issues the [district] court would be considering in reference to the Rule 12 motion *before* she presented her case at trial" and that "she did not have a meaningful opportunity to oppose [the Defendants'] motion at a meaningful time."

---

10. Although we do not reach the merits of this claim for lack of preservation, we note that Conner's procedural due process claim would necessarily fail given our conclusion that she has not established that a private right of action exists for a violation of Utah Code section 67-19-18(2). *See supra* ¶¶ 26–33. Even if the rule 12(c) motion had been brought in a timely fashion and resolved prior to trial, Conner could not have successfully pursued a non-existent statutory enforcement claim.

¶48 "As a general rule, claims not raised before the trial court may not be raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. It is well-established that the preservation requirement "applies to every claim, including constitutional questions." *Id.*; *see also State v. Dalton*, 2014 UT App 68, ¶ 55, 331 P.3d 1110 ("The preservation requirement applies to constitutional issues."). Although Conner claims that she preserved this issue, the parts of the record cited by Conner do not support that assertion. "For an issue to be preserved, a party must raise it before the district court specifically, in a timely manner, and with support by evidence and relevant legal authority, such that the issue has been presented to the trial court in such a way that the trial court has an opportunity to rule on it." *True v. Utah Dep't of Transp.*, 2018 UT App 86, ¶ 24, 427 P.3d 338 (quotation simplified). The portions of the record Conner cites reflect her objections to the timeliness of the rule 12(c) motion, but do not allege a violation of her constitutional right to due process. Her constitutional claim is therefore unpreserved. Where the constitutional issue is unpreserved, the appellant must establish an exception to the preservation requirement. *See In re A.W.*, 2018 UT App 217, ¶ 26, 437 P.3d 640 ("[I]t is well established that Utah appellate courts will not review unpreserved constitutional claims unless an exception to the preservation rule applies."). Because Conner does not allege an exception to preservation on appeal, we do not consider the merits of her due process claim.

CONCLUSION

¶49 The belated rule 12(c) motion resulted in a regrettable waste of party and judicial resources that might have been avoided had the Defendants sought judgment based on governmental immunity promptly after pleadings were closed or, at the very least, in sufficient time to possibly avoid a

five-day jury trial. However, we cannot say that the court exceeded its discretion in electing to entertain the motion.

¶50   On the merits, the district court correctly construed Conner's first cause of action as a tort claim for wrongful termination in violation of public policy and denied her motion to amend the pleadings post-trial to state a statutory enforcement claim to overcome the defense of governmental immunity. Conner has failed to establish that the statute on which she relies creates a private right of action. Because the government has not waived immunity for Conner's only viable claim—wrongful termination in violation of public policy—the district court correctly granted the Defendants' motion for judgment on the pleadings, denied Conner's motion to amend, and dismissed the claim notwithstanding the jury's verdict.

¶51   Affirmed.

————